<u>**ORAL ARGUMENT HELD FEBRUARY 28 AND 29, 2012**</u>
<u>**PANEL DECISION ISSUED JUNE 26, 2012**</u>

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

|  |  |
|---|---|
| COALITION FOR RESPONSIBLE REGULATION, et al., | ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) Nos. 09-1322; ) 10-1073; 10-1092; ) 10-1167 (and |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | )  consolidated cases). ) ) |
| Respondent. | ) ) |

_____ )

<u>**EPA'S CONSOLIDATED RESPONSE TO PETITIONERS' MOTIONS TO**</u>
<u>**GOVERN FURTHER PROCEEDINGS**</u>

                                        SAM HIRSCH
                                        Acting Assistant Attorney General
 OF COUNSEL:                            JON M. LIPSHULTZ
                                        PERRY M. ROSEN
ELLIOTT ZENICK                          AMANDA SHAFER BERMAN
BRIAN DOSTER                            United States Department of Justice
MICHAEL G. LEE                          Environment & Natural Resources Div.
MELINA WILLIAMS                         Environmental Defense Section
DAVID COURSEN                           P.O. Box 7611
Office of General Counsel               Washington D.C. 20044
U.S. Environmental Protection           Tel: (202) 514-2191
    Agency
Washington, D.C. 20460                  Counsel for Respondents

                                        Dated: November 21, 2014

# TABLE OF AUTHORITIES

## CASES

*A.L. Pharma, Inc. v. Shalala,*
    62 F.3d 1484 (D.C. Cir. 1995) ............................................................28

*Alabama Power v. Costle,*
    636 F.2d 323 (D.C. Cir. 1979) ................................................. 25, 26

*Allied-Signal, Inc. v. NRC,*
    988 F.2d 146 (D.C. Cir. 1993) ............................................. 27, 28, 29

*Chevron, U.S.A. v. NRDC,*
    467 U.S. 837 (1984) ............................................................................6

*Coal. for Responsible Regulation v. EPA,*
    684 F.3d 102 (D.C. Cir. 2012), *aff'd in part and rev'd*
    *in part sub nom. UARG v. EPA,* 134 S. Ct. 2427 (2014) ......................... 3, 11, 27

*Entergy Corp. v. Riverkeeper, Inc.,*
    556 U.S. 208 (2009) ..........................................................................12

*EPA v. EME Homer City Gen.,*
    134 S. Ct. 1584 (2014) ......................................................................21

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................5

*Int'l Union, UMWA v. FMSHA,*
    920 F. 2d 960 (D.C. Cir. 1990) ................................................. 27, 30

*NRDC v. EPA,*
    25 F.3d 1063 (D.C. Cir. 1994) ..........................................................19

*Authorities chiefly relied upon are marked with an asterisk.

*Utility Air Regulatory Group ("UARG") v. EPA,*
  134 S. Ct. 2427 (2014) .......................................... 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12,
                                                       13, 18, 20, 22, 24, 25, 28, 29

*Whitman v. Am. Trucking Ass'n,*
  531 U.S. 457 (2001) ............................................................................23

## STATUTES

42 U.S.C. § 7475(a)(4).......................................................................... 24, 30

42 U.S.C. § 7479(3) ............................................................................ 19, 20

## CODE OF FEDERAL REGULATIONS

40 C.F.R. § 51.166(b)(23)(i).......................................................................26

40 C.F.R. § 51.166(b)(23)(ii).......................................................................27

40 C.F.R. § 51.166(b)(48)(iv)................................. 5, 14, 15, 16, 18, 27, 31

40 C.F.R. § 51.166(b)(48)(iv)(a) ...............................................................16

40 C.F.R. § 51.166(b)(48)(iv)(b) ...............................................................16

40 C.F.R. § 51.166(b)(48)(v).......................................................................15

40 C.F.R. § 51.166(b)(49)(iv)................................................................. 5, 15

40 C.F.R. § 51.166(j)(2)-(3)................................................... 5, 15, 16, 27

40 C.F.R. § 52.21(b)(12)............................................................................19

40 C.F.R. § 52.21(b)(23)(i).........................................................................26

40 C.F.R. § 52.21(b)(23)(ii)................................................................. 15, 27

40 C.F.R. § 52.21(b)(49)(iv)........................................... 5, 14, 15, 18, 27

40 C.F.R. § 52.21(b)(49)(v) ...................................................................15

40 C.F.R. § 52.21(b)(50) ......................................................................14

40 C.F.R. § 52.21(b)(50)(iv) ............................................................. 5, 16

40 C.F.R. § 52.21(j)(2)-(3) ............................................... 5, 14, 15, 26, 27, 30

## **FEDERAL REGISTERS**

43 Fed. Reg. 26,380 (June 19, 1978) .....................................................4

43 Fed. Reg. 26,382 ..............................................................................4

43 Fed. Reg. 26,388 ......................................................................... 4, 15

43 Fed. Reg. 26,397 .............................................................................15

43 Fed. Reg. 24,403 ..............................................................................4

45 Fed. Reg. 52,676 (Aug. 7, 1980)........................................................4

45 Fed. Reg. 52,710-11 .........................................................................4

67 Fed. Reg. 80,186 (Dec. 31, 2002) ......................................................4

67 Fed. Reg. 80,240 ......................................................................... 4, 15

67 Fed. Reg. 80,274 .............................................................................14

67 Fed. Reg. 80,278 .............................................................................14

75 Fed. Reg. 25,324 (May 7, 2010) ........................................................3

75 Fed. Reg. 31,514 (June 3, 2010) ........................................................4

75 Fed. Reg. 31,567 ....................................................................... 5, 14, 17

75 Fed. Reg. 31,568 .............................................................................14

75 Fed. Reg. 31,560 ...................................................................................................28

# **TABLE OF CONTENTS**

DISCUSSION   …………………………………………………    1

I.      THE SUPREME COURT AFFIRMED THE PORTION
        OF THIS COURT'S DECISION FINDING THAT THE
        STATUTE REQUIRES APPLICATION OF BACT TO
        GREENHOUSE GAS EMISSIONS FROM "ANYWAY"
        SOURCES   …………………………………………………    3

II.     THE SUPREME COURT DID NOT IMPLICITLY HOLD
        THAT EPA IS REQUIRED TO CONDUCT ADDITIONAL
        RULEMAKING BEFORE THE BACT REQUIREMENT
        CAN BE APPLIED TO GREENHOUSE GAS EMISSIONS
        FROM "ANYWAY" SOURCES        ……………………...    6

A.      The Supreme Court Upheld EPA's View that the Statute
        Directly Requires the Application of BACT to Greenhouse
        Gas Emissions from "Anyway" Sources        ………………    7

B.      Petitioners' Chevron Arguments are Irrelevant and Mistaken.    10

C.      EPA's Implementing Regulations Requiring BACT for
        Anyway Sources Were Upheld and Remain Valid  …………    14

1.      The pertinent sections of EPA's regulations are clear and
        were upheld, not struck down, by the decisions of this Court
        and the Supreme Court   …………………………………….    14

2.      The possibility of a successful as-applied challenge to
        a particular permit decision in the future does not expand
        the scope of this facial challenge to EPA's regulations   ….    18

3.      Continued application of the BACT requirement is not
        contingent on completion of a de minimis rulemaking   ….    21

v

III.    NO RELIEF IS WARRANTED ON BACT ISSUES, BUT
        IF ANY RELIEF IS GRANTED AT ALL, IT SHOULD
        AT MOST BE REMAND WITHOUT VACATUR        …..   27

CONCLUSION    ……………………………………………..   31

Respondent United States Environmental Protection Agency ("EPA")
hereby submits this consolidated response to the motions to govern further
proceedings submitted by the Petitioners "State, Industry and Public Interest
Parties" (Docket 10-1073, ECF No. 1518254) ("State/Industry Mot.") and the
"Energy-Intensive Manufacturers Group" (Docket 10-1073, ECF No. 1518310)
("EIMG Mot.") (collectively, "Petitioners' Motions").  As demonstrated below,
and in EPA's motion to govern further proceedings (Docket No. 09-1322, ECF No.
1518233) ("EPA Mot."), Petitioners' Motions should be denied and EPA's should
be granted.

## DISCUSSION

There is little or no meaningful dispute with regard to roughly half the issues
presented in the motions to govern.  Specifically, all parties appear to agree that, in
light of *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) ("*UARG*"),
vacatur is warranted with respect to the portion of EPA's regulations that treated
greenhouse gases as a pollutant for purposes of defining a "major emitting facility"
or "major source" (or a modification thereof) under the Clean Air Act's ("CAA" or
the "Act") prevention-of-significant deterioration ("PSD") and Title V permitting
programs, as well as the related regulations that specified how these applicability
requirements would be phased in for additional sources.  *See generally* EPA Mot.

at 3-4, 9-12.

Instead, as EPA anticipated, *see id.* at 12-18, Petitioners' main argument is to press their belief that, until such time as EPA completes additional rulemaking, the Supreme Court's decision precludes operation of the requirement that sources that already are subject to PSD permit requirements due to their emissions of other pollutants (so-called "anyway" sources) must apply best available control technology ("BACT") to their emissions of greenhouse gases.[1]  As will be explained below, these arguments should be rejected because they are premised entirely on Petitioners' wistful version of what the Supreme Court *might* have decided, rather than on what the Supreme Court actually *did* decide, including the Supreme Court's express direction that EPA may "continue" to require BACT for greenhouse gas emissions from "anyway" sources.  *See UARG*, 134 S. Ct. at 2447-

---

[1]      Although Petitioners' arguments are focused almost entirely on PSD/BACT issues, they do vaguely suggest in passing that the Supreme Court's decision should also be read as precluding any regulation of greenhouse gas emissions in Title V permits.  *See* State/Industry Mot. at 19-20.  While EPA agrees that greenhouse gas emissions, by themselves, cannot cause a source to be "major" for purposes of triggering the obligation to obtain a Title V permit following *UARG*, there is nothing in the Supreme Court's decision that affects other grounds on which a Title V permit might be required or the applicable requirements that must be addressed in a Title V permit.  For example, nothing in *UARG* precludes inclusion in a Title V permit of greenhouse-gas emission limitations that derive from other properly-applied CAA requirements, such as BACT emission limits for "anyway" sources.  The proposed form of relief in EPA's motion to govern is intentionally structured to reflect this distinction.  *See* EPA Mot. at 19-20.

2

49.  Furthermore, Petitioners do not demonstrate how the broad and disruptive remedy they request is preferable to the clear, functional, common sense regulatory framework that results from the remedy requested by EPA.

I.     **THE SUPREME COURT AFFIRMED THE PORTION OF THIS COURT'S DECISION FINDING THAT THE STATUTE REQUIRES APPLICATION OF BACT TO GREENHOUSE GAS EMISSIONS FROM "ANYWAY" SOURCES.**

In *Coalition for Responsible Regulation v. EPA*, 684 F.3d 102 (D.C. Cir. 2012), *aff'd in part and rev'd in part sub nom. UARG v. EPA,* 134 S. Ct. 2427 (2014), this Court held that EPA correctly interpreted the Act as requiring that the regulation of greenhouse gases from *mobile* sources under the Vehicle Rule[2] acts as a relatively broad "trigger" automatically subjecting certain *stationary* sources of such emissions to certain requirements (discussed more specifically in EPA's Motion to Govern and below) under the Act's PSD pre-construction and Title V operating permit programs.  *Coalition*, 684 F.3d at 132-44.  The only issue on which *certiorari* was granted was described by the Supreme Court as "whether it *was* permissible for EPA to determine that its motor-vehicle greenhouse-gas regulations *automatically triggered* permitting requirements *under the Act* for stationary sources that emit greenhouse gases."  *UARG*, 134 S. Ct. at 2434 (emphasis added).  As the highlighted language indicates, the focus of the Supreme

---

[2]       *See* 75 Fed. Reg. 25,324 (May 7, 2010) (the Vehicle Rule).

Court's inquiry was not, as Petitioners would have it, on the extent to which it might be permissible *in the future* for EPA to adopt regulations controlling greenhouse gas emissions from stationary sources, *see* State/Industry Mot. at 5-12; EIMG Mot. at 2-6, but rather, whether EPA's *existing* regulations[3] reflected a proper understanding of what stationary source requirements were "automatically triggered . . . under the Act" by EPA's regulation of greenhouse gas emissions from motor vehicles through the Vehicle Rule.

On these issues, the Supreme Court affirmed this Court's reading of the Act's requirements in part and reversed it in part. The Supreme Court held that greenhouse gas emissions cannot *by themselves* cause a source or modification to be "major" for purposes of triggering a requirement to obtain a PSD or Title V permit, and it thus reversed this Court's decision to that extent. *UARG*, 134 S. Ct. at 2449. However, the Supreme Court affirmed this Court's decision (and, by extension, EPA's regulations) with regard to application of the BACT requirement to greenhouse gas emissions from "anyway" sources. *Id.*

---

[3]     The specific regulations at issue were part of EPA's "Historic PSD Regulations" and "Tailoring Rule." *See* 75 Fed. Reg. 31,514 (June 3, 2010) (Tailoring Rule); *see also* 43 Fed. Reg. 26,380, 26,382, 26,388, 26,403 (June 19, 1978); 45 Fed. Reg. 52,676, 52,710-11 (Aug. 7, 1980); 67 Fed. Reg. 80,186, 80,240/1 (Dec. 31, 2002) (collectively referred to as the "Historic PSD Regulations"); *see also* EPA Mot. at 4-8 (discussing this background).

This statutory requirement is expressly reflected in *existing* EPA regulations.

EPA long ago adopted regulations that apply the statutory BACT requirement to

each pollutant subject to regulation under the Clean Air Act. *See* 40 C.F.R. §

51.166(j)(2)-(3); 40 C.F.R. § 52.21(j)(2)-(3); 40 C.F.R. § 51.166(b)(49)(iv); 40

C.F.R. § 52.21(b)(50)(iv) (as adopted and refined in the 1978, 1980, and 2002

versions of the Historic PSD Regulations). In addition, at the time it first regulated

greenhouse gases under the Act, EPA added a regulation that limited the extent to

which these provisions applied to greenhouse gases in the first step of the phase-in

of greenhouse gas permitting requirements under the Tailoring Rule, *see* 40 C.F.R.

§§ 51.166(b)(48)(iv), 52.21(b)(49)(iv), which was part of the challenges in No. 10-

1073. *See generally* EPA Mot. at 5-7; 75 Fed. Reg. at 31,567. Since this Court

denied or dismissed *all* the petitions for review of EPA's regulations, and since this

Court's judgment as it pertains to *these* issues was "affirmed" by the Supreme

Court, under normal principles of appellate review these regulations clearly remain

valid. *See* EPA Mot. at 14-15 (citing *FCC v. Fox Television Stations, Inc.*, 556

U.S. 502, 509 (2009)). But if any confirmation of this result were needed, it was

supplied by the Supreme Court itself, when it summed up its holding on this issue

by stating that "EPA may . . . *continue* to treat greenhouse gases as a 'pollutant

subject to regulation under this chapter' for purposes of requiring BACT for

'anyway' sources." *UARG*, 134 S. Ct. at 2449 (emphasis added).

## II. THE SUPREME COURT DID NOT IMPLICITLY HOLD THAT EPA IS REQUIRED TO CONDUCT ADDITIONAL RULEMAKING BEFORE THE BACT REQUIREMENT CAN BE APPLIED TO GREENHOUSE GAS EMISSIONS FROM "ANYWAY" SOURCES

Notwithstanding the Supreme Court's express direction that BACT regulation of greenhouse gas emissions from "anyway" sources can "continue," Petitioners raise a hodgepodge of arguments as to why they believe that decision should nonetheless be read as implicitly requiring that such regulation (at least for now) be *dis*continued. This Orwellian conclusion rests, in part, on a contention that the Supreme Court implicitly found that the BACT requirement, at least as applied in this context, is not "self-executing." State/Industry Mot. at 4-6. Relatedly, Petitioners also argue that the Supreme Court only determined that EPA's interpretation *could* represent a permissible construction of an ambiguous provision of the statute in some unspecified future rulemaking, not that it is necessarily a clear or unambiguous requirement of the statute under the first step of the traditional statutory construction standard in *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), or a validly-imposed, permissible requirement under EPA's *existing* regulations. *See* State/Industry Mot. at 10-12; EIMG Mot. at 1-4, 7-17. Finally, and more specifically, Petitioners argue that the Supreme Court required EPA to establish, by rule, a true *de minimis* threshold before the BACT requirements can be applied to greenhouse gas

6

emissions from anyway sources.  State/Industry Mot. at 9-11; EIMG Mot. at 17.

As will be explained below, none of these arguments has merit, and the Supreme

Court's decision should be read to mean what it actually says, *i.e.*, that BACT

regulation of greenhouse gas emissions from anyway sources can "continue."

*UARG*, 134 S. Ct. at 2449.

### A. The Supreme Court Upheld EPA's View that the Statute Directly Requires the Application of BACT to Greenhouse Gas Emissions from "Anyway" Sources.

Petitioners' first argument -- that the Supreme Court found the BACT

requirement in this context not to be "self-executing" -- is both incorrect and

inapposite.  The argument is incorrect because it unjustifiably merges the Supreme

Court's holding on whether sources are required to obtain PSD and Title V permits

based solely on being a "major" source of greenhouse gas emissions with the

Court's completely separate (and opposite) holding that sources that are otherwise

required to obtain a PSD permit must apply BACT to their greenhouse gas

emissions.[4]  Further, Petitioners' argument is, in any event, essentially irrelevant,

because regardless of whether the Supreme Court found the BACT requirement to

---

[4]    Petitioners' present assertion is also inconsistent with their prior assertion in the original proceedings before this Court that "[t]here is no logical reason why the PSD permitting triggers must be coextensive with the substantive PSD requirements, like Section 165(a)(4)."  Petitioners' Joint Opening Brief, No. 10-1167, at 40-41 (filed Aug. 5, 2011) (ECF1322724); *see also id.* at 45.

be "self-executing," the Court at the very least clearly upheld EPA's view that application of BACT in this context was "required" by the statute, which is all that was necessary to leave EPA's PSD implementing regulations on these issues (the general BACT provisions and the first step of the Tailoring Rule) in place.

In *UARG*, the Supreme Court first tackled the question of whether greenhouse gases could permissibly be considered an "air pollutant" for purposes of determining whether a source is a "major" source that is required to obtain PSD and Title V permits. *UARG*, 134 S. Ct. at 2439-46. In answering this question in the negative, the Supreme Court stressed that it found the term "air pollutant" to be more flexible and amenable to a context-specific interpretation than EPA had. *Id.* at 2439-42. The Court then found that, under *Chevron*'s second step, a greenhouse gas-inclusive interpretation of "air pollutant" in the context of determining whether a source is "major" led to practical consequences that the Court viewed as unreasonable in the PSD and Title V permit context. *Id.* at 2442-46.

When the Supreme Court turned to the BACT issue, however, it expressly *distinguished* the major source issue. First, beginning with the text, the Court stressed that "[t]he text of the BACT provision is far less open-ended than the text of the PSD and Title V permitting triggers." *Id.* at 2448. More specifically, the Court observed: "Whereas the dubious breadth of 'any air pollutant' in the permitting triggers suggests a role for agency judgment in identifying the subset of

8

pollutants covered by the particular regulatory program at issue, the more specific

phrasing of the BACT provision suggests that the necessary judgment *has already*

*been made by Congress*," and that a narrower construction could not be supported

by examination of "[t]he wider statutory context." *Id.* (emphasis added). The

Court concluded by explaining that "[e]ven if the text were not clear," application

of BACT to greenhouse gas emissions from "anyway" sources would not be

impermissible, since (in contrast to the Court's findings on the major source issue)

"the record before us does not establish that the BACT provision as written is

incapable of being sensibly applied to greenhouse gases." *Id.* at 2449.

As the above discussion indicates, the Supreme Court expressly

*distinguished* its statutory analysis on the BACT issue from its statutory analysis

on the major source issue. Although the Supreme Court never actually used the

term "self-executing," as noted above, the Court did describe its inquiry on both

statutory issues as involving the question whether the pertinent stationary source

regulatory obligations were "automatically triggered . . . under the Act" by EPA's

regulation of greenhouse gas emissions from motor vehicles through the Vehicle

Rule. *UARG,* 134 S. Ct. at 2434. Accordingly, given the express distinctions

drawn by the Supreme Court on the two major statutory issues before it, the *UARG*

Court found that the obligation to obtain a permit based solely on emissions of

"major" amounts of greenhouse gases was not triggered, but the requirement for

9

sources already required to obtain a permit (*i.e.,* "anyway" sources) to apply BACT to greenhouse gases was "automatically triggered," by operation of the statute when the Vehicle Rule went into effect.

Moreover, at the very least, the Court clearly and expressly held that EPA may "*continue* to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of *requiring* BACT for 'anyway' sources.'" *UARG,* 134 S. Ct. at 2449 (emphasis added). Accordingly, however the BACT requirement for anyway sources in this context is characterized, it clearly is, in the Supreme Court's view, a "require[ment]" that EPA may "continue" to apply, which at the end of the day is the only pertinent question here.

**B. Petitioners' *Chevron* Arguments are Irrelevant and Mistaken.**

Petitioners also argue that, at most, the Supreme Court merely held that EPA *could* permissibly regulate greenhouse gas emissions from anyway sources (*Chevron* step two), not that the statute clearly requires such regulation (*Chevron* step one). *See* State/Industry Mot. at 10-12; EIMG Mot. at 1-4, 7-17. These arguments are also both irrelevant and mistaken.

First, as suggested above, it simply does not matter whether the Court's decision regarding the application of BACT for greenhouse gas emissions from anyway sources was made under *Chevron* step one or step two. In either case, the bottom line is that the Supreme Court "affirmed" this Court's determination that

10

BACT for greenhouse gases *is required* by the statute,[5] and accordingly ruled that EPA may "continue" to apply that requirement. *UARG,* 134 S. Ct. at 2449.

In any event, even if it mattered, this part of the Supreme Court's decision was a *Chevron* "step one" analysis. As discussed above, the Supreme Court's affirmation that EPA may require BACT for greenhouse gas emissions for "anyway" sources was primarily based on what the Court viewed to be the express language of the statute. *UARG*, 134 S. Ct. at 2448 (stating, for example, that "the more specific phrasing of the BACT provision suggests that the necessary judgment has already been made by Congress."). Only after making these findings based on the clear text of the statute did the Court go on to explain why, "[e]ven if the text were not clear," it still would not find EPA's interpretation to be "unreasonable." *Id.* In other words, the Supreme Court appeared to ground its BACT analysis on the "clear" text of the statute (*Chevron* step one), but simply explained why it would also, in the alternative, still uphold EPA's interpretation as reasonable if it were necessary to reach that issue.

---

[5]    Recognizing that "greenhouse gases are indisputably a pollutant subject to regulation under the Act," this Court held that "it is crystal clear that PSD permittees must install BACT for greenhouse gases." *Coalition,* 684 F.3d at 137. This Court also said: "As discussed in the previous section, greenhouse gases are regulated under PSD . . . pursuant to automatic operation of the CAA." *Id.* at 144.

Ignoring all of this, Petitioners proclaim that the Court's treatment of the BACT issue must be considered a "step two" analysis because the Court characterized its inquiry as one considering whether EPA "*permissibly* determined that a source already subject to the PSD program because of its emission of conventional pollutants (an 'anyway' source) may be required to limit its greenhouse-gas emissions by employing the 'best available control technology' for greenhouse gases." *UARG*, 134 S. Ct. at 2438 (emphasis added); *see also id.* at 2448; State/Industry Mot. at 6-7; EIMG Mot. at 2-3. This argument, however, places too much weight on an out-of-context reference to the word "permissible." Throughout its opinion, the Court used this term as part of a shorthand summary of the *overall* statutory inquiry the Court intended to undertake, with regard to both the major source issue and the BACT issue. *See UARG,* 134 S. Ct. at 2434, 2439, 2448. When used in this manner, the term does not distinguish between the two traditional *Chevron* steps, since it would also not be "permissible" for EPA to adopt a statutory interpretation that the Court found to conflict with Congress' clearly-stated intent. *See Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 n.4 (2009) (where Justice Scalia, the author of the *UARG* decision, makes precisely this point, explaining "surely if Congress has directly spoken to an issue then any agency interpretation contradicting what Congress has said would be unreasonable").

When the Supreme Court intended to use the term "permissible" to refer specifically to *Chevron*'s second step, as it did with regard to the major source issue, it did so clearly and expressly.  *See UARG*, 134 S. Ct. at 2442 ("Having determined that EPA was mistaken in thinking the Act *compelled* a greenhouse-gas-inclusive interpretation of the PSD and Title V applicability triggers, we next consider the Agency's alternative position that its interpretation was justified as an exercise of its 'discretion' to adopt a 'reasonable construction of the statute.'") (emphasis in original) (citation omitted).  By contrast, in the Court's analysis of the BACT issue, the Court only used the term "permissible" as part of the general shorthand introduction to its discussion which, for the reasons stated above, simply does not distinguish between the two *Chevron* steps.  *See UARG,* 134 S. Ct. at 2448.

Finally, whatever the significance of the Court's use of the term "permissible," the bottom line again is that in this case, the Supreme Court agreed that application of the BACT requirement to greenhouse gas emissions from "anyway" sources is, in fact, permissible.  That being the case, the Supreme Court's use of this term, in context, cannot conceivably support the conclusion that the challenged rule is either invalid or somehow otherwise unlawful to implement without further rulemaking action.

### C. EPA's Implementing Regulations Requiring BACT for Anyway Sources Were Upheld and Remain Valid

**1.     The pertinent sections of EPA's regulations are clear and were upheld, not struck down, by the decisions of this Court and the Supreme Court.**

As discussed above and in EPA's Motion to Govern, the PSD regulations subject to review in this case -- specifically, the first step of the Tailoring Rule -- clearly provide for application of BACT to greenhouse gas emissions from anyway sources in amounts greater than 75,000 tons per year of carbon dioxide equivalent ("$CO_{2e}$").  *See* EPA Mot. at 6-7; *see also* 40 C.F.R. §§ 51.166(b)(48)(iv), 52.21(b)(49)(iv); 75 Fed. Reg. at 31,567-68.  This Court denied or dismissed all the challenges to all of EPA's regulations, including these provisions, and the Supreme Court "affirmed" that decision as it applied to application of the BACT requirement to greenhouse gas emissions from anyway sources.[6]  Therefore, these

---

[6]     Indeed, it should also be noted that some potentially relevant EPA regulations were never part of this case *at all*.  Specifically, Petitioners only challenged the aspects of the Historic PSD Regulations that were pertinent to the question of whether greenhouse gas emissions, by themselves, could trigger the need for a PSD permit (*i.e.,* the major source issue).  *See* Petitioners' Joint Opening Brief, No. 10-1167, at 45 & n.6 (filed Aug. 5, 2011) (ECF1322724).  While the Court found it had jurisdiction to consider an otherwise-untimely challenge to these specific aspects of the Historic PSD Regulations, s*ee Coalition,* 684 F.3d at 130, Petitioners *never* specifically challenged the portions of EPA's Historic PSD Regulations that specify, as a general matter, that newly-regulated pollutants are subject to the BACT requirement.  *See* 40 C.F.R. §§ 52.21(b)(50), 52.21(j)(2)-(3) (as adopted or amended in 2002); 67 Fed. Reg. at 80,274, 80,278; 67 Fed. Reg. at

regulations were undisturbed by the Supreme Court's decision.

In an attempt to avoid this seemingly obvious conclusion, Petitioners claim that the parts of EPA's regulations initially limiting the application of the BACT requirement to greenhouse gas emissions from "anyway" sources[7] (which were upheld by the Supreme Court) are insufficiently distinct from the parts of EPA's regulations creating a schedule for requiring major sources of greenhouse gases to obtain a PSD permit[8] (which were struck down by the Supreme Court). State/Industry Mot. at 9-10. However, this argument is, again, both incorrect and inapposite. The argument is demonstrably incorrect because the text of the pertinent BACT regulations (which Petitioners conspicuously fail to cite in full)

_____

80,240 ("The PSD program applies automatically to newly regulated NSR pollutants, which would include final promulgation of an NSPS applicable to a previously unregulated pollutant."). Accordingly, any attempt to challenge them now would be barred for lack of jurisdiction and by waiver principles. Even without step one of the Tailoring Rule, these general provisions were sufficient by themselves to require application of BACT to greenhouse gas emissions from such sources when the Vehicle Rule took effect. *See* 43 Fed. Reg. at 26,397 (BACT applies to "all pollutants regulated under Title II of the Act regarding emission standards for mobile sources."). For PSD purposes, step one of the Tailoring Rule served only to limit the application of the BACT requirement to greenhouse gas emissions from anyway sources that emitted this pollutant in excess of a specified level. 40 C.F.R. § 52.21(b)(49)(iv). Without this limitation, sections 52.21(b)(j)(2)-(3) and 52.21(b)(23)(ii) of EPA's regulations operate to require BACT for greenhouse gases emitted at any level.

[7]      40 C.F.R. § 51.166(b)(48)(iv); 40 C.F.R. § 52.21(b)(49)(iv).

[8]      40 C.F.R. § 51.166(b)(48)(v); 40 C.F.R. § 52.21(b)(49)(v).

are clearly and explicitly limited to greenhouse gas emissions from "anyway"

sources at the specified threshold.[9]  While Petitioners strain to suggest that EPA's

use of the term "regulated NSR pollutant" in these regulations could be

misinterpreted to refer to either "anyway" or "non-anyway" sources, the

regulations in fact make it explicit that the BACT requirement will only apply to

facilities that need a PSD permit based on their emissions of "a regulated NSR

pollutant *that is not GHGs*." 40 C.F.R. § 51.166(b)(48)(iv) (emphasis added).

Furthermore, even if there were some ambiguity in these provisions (which there is

not), the narrative form of vacatur proposed in EPA's motion to govern would

eliminate any doubt, since it would make explicit that *any* of EPA's regulations are

vacated to the extent they are interpreted as requiring a source to obtain a PSD

permit solely based on its emissions of greenhouse gases.  *See* EPA Mot. at 19.

---

[9]      *See, e.g.,* 40 C.F.R. § 51.166(b)(48)(iv)(a) (applying such requirements
where "[t]he stationary source is a new major stationary source for a regulated
NSR pollutant *that is not GHGs*, and also will emit or will have the potential to
emit 75,000 tpy [tons per year] $CO2_e$ or more.") (emphasis added); 40 C.F.R. §
51.166(b)(48)(iv)(b) (applying these requirements to modifications of existing
sources where "[t]he stationary source is an existing major stationary source for a
regulated NSR pollutant *that is not GHGs*, and also will have an emissions
increase of a regulated NSR pollutant, and an emissions increase of 75,000 tpy
$CO2_e$ or more.") (emphasis added).  *See also* 40 C.F.R. § 52.21(b)(50)(iv); 40
C.F.R. § 51.166(j)(2)-(3).

Finally, there is no merit whatsoever to Petitioners' suggestion that EPA did not intend during the underlying rulemaking to distinguish between the BACT regulation of greenhouse gas emissions from "anyway" sources, on the one hand, and the treatment of greenhouse gases alone as a potential "major" source trigger, on the other hand.   *See* State/Industry Mot. at 7-8.  As discussed above, the text of the pertinent sections of EPA's regulations themselves (which were described as the first step of the Tailoring Rule) could not be clearer.  In addition, as EPA explained in the preamble to the Tailoring Rule when discussing its intent for this first step, "[b]eginning on January 2, 2011, sources subject to PSD requirements for their conventional pollutants anyway will be required to apply BACT to their GHG emissions if they construct or modify and in so doing, emit at least 75,000 tpy $CO_{2e}$ in GHGs."  75 Fed. Reg. at 31,567.  EPA then added that "[n]o source would become major for PSD or title V under this step based on their GHG emissions alone."  *Id.*  The limitation of the step one Tailoring Rule provisions to "anyway" sources thus was, and remains, explicit.

In sum, the first step of the Tailoring Rule was clearly intended to involve application of the BACT requirement to greenhouse gas emissions from "anyway" sources, and was intended to assure that greenhouse gas emissions, by themselves, could not trigger an obligation to obtain a Title V or PSD permit on the basis that the source was a major source.  Since this Court upheld EPA's regulations, and

17

since the Supreme Court affirmed that decision as it applies to the BACT

requirement, EPA's PSD regulations reflecting the first step of the Tailoring Rule,

including 40 C.F.R. §§ 51.166(b)(48)(iv), 52.21(b)(49)(iv), are valid and should

remain in place.  *See* EPA Mot. at 6-7.

> **2.    The possibility of a successful as-applied challenge to**
> **a particular permit decision in the future does not expand**
> **the scope of this facial challenge to EPA's regulations.**

Petitioners ascribe unwarranted implications to the Supreme Court's

statement that "[o]ur narrow holding is that nothing in the statute categorically

prohibits EPA from interpreting the BACT provision to apply to greenhouse gases

emitted by 'anyway' sources."  *UARG*, 134 S. Ct. at 2449; *see* State/Industry Mot.

at 11-12; EIMG Mot. at 3.  Petitioners' suggestion is that by so stating, the Court

meant that operation of EPA's BACT regulations for "anyway" sources -- which

were (as discussed above) actually *upheld* by this Court and the Supreme Court --

should in some way be vacated or suspended until the Agency conducts additional

rulemaking "to make sense of PSD GHG regulation of 'anyway' sources."  EIMG

Motion at 3.

This argument badly misconstrues the nature of judicial review.  To the

extent Petitioners felt that the first phase of the Tailoring Rule was defective

because it did not, for example, address all the "facts" and "consequences" of the

application of BACT for greenhouse gas emissions from anyway sources, EIMG

Motion at 3, or "[t]he reasonableness of any future BACT regulation of GHGs,"
State/Industry Mot. at 11, it was their obligation to present those arguments to *this*
Court as part of their initial brief. *See, e.g., NRDC v. EPA,* 25 F.3d 1063, 1071 n.4
(D.C. Cir. 1994). In *Coalition for Responsible Regulation*, this Court has already
fully considered and rejected *all* of the facial challenges to EPA's implementing
regulations that were actually presented by Petitioners, and that decision was
affirmed by the Supreme Court as to the BACT issue.

Furthermore, it is important to bear in mind that the regulations at issue here
merely establish a framework for future source-specific permit proceedings. The
statute expressly requires that EPA consider "economic impacts and other costs" in
the context of determining BACT for each source. 42 U.S.C. § 7479(3). This
case-by-case requirement to consider this and other factors has long been reflected
in EPA regulations that pre-date the regulation of greenhouse gases. *See, e.g.,* 40
C.F.R. § 52.21(b)(12).

It would be in the context of such permit proceedings, not this case, that
many, if not all, of Petitioners' specific (and presently speculative) concerns about
application of the BACT requirement might be appropriately raised. For example,
Petitioners raise concerns about how EPA's guidance document for greenhouse gas
BACT analyses might be applied, and the costs to the regulated community that
may result. *See, e.g.,* EIMG Mot. at 3-5, 15-17; State/Industry Mot. at 11.

19

However, as the very first sentence of the cited guidance makes clear, it is intended to "assist permit writers and permit applicants" in PSD and Title V permit proceedings.  EIMG Mot., Exh. A, at 1.  As the Supreme Court explained, that guidance leaves permit writers with substantial discretion to consider various options pertaining to the application of the BACT requirement.  *UARG,* 134 S. Ct. at 2447-48.  The Court then went on to make clear that, in any event, "we are not reviewing EPA's guidance in these cases, and we cannot say that it is impossible for EPA and state permit authorities to devise rational ways of complying with the statute's directive to determine BACT for greenhouse gases 'on a case-by-case basis, taking into account energy, environmental, and economic impacts and costs.'"  *Id.* at 2449, n.9 (quoting 42 U.S.C. § 7479(3)).

Therefore, when the Supreme Court characterized its decision on the BACT issue as a "narrow holding," that was simply a reflection of the nature of the proceedings in this case and the very narrow set of legal issues on which *certiorari* was granted (i.e., the statutory question of whether BACT requirements for greenhouse gas emissions were "automatically triggered . . . under the Act," *UARG,* 134 S. Ct. at 2434).  While the Supreme Court acknowledged the *possibility* that the PSD framework regulations at issue here could be *applied* in an inappropriate manner in a particular permit proceeding in the future, *see UARG,* 134 S. Ct. at 2449, the Court held that the possibility of such a future as-applied

20

challenge did not render the regulations statutorily infirm in the present facial

challenge, since "nothing in the statute categorically prohibits EPA from

interpreting the BACT provision to apply to greenhouse gases emitted by 'anyway'

sources." *Id.* The Court's description of its holding as "narrow," *id.*, is therefore

simply a reflection of the narrow scope of review for any facial statutory challenge

to a regulation,[10] the narrow focus of the challenges that Petitioners chose to

present in the initial proceedings in this case, and the narrow scope of the Supreme

Court's grant of *certiorari*.

### 3.   Continued application of the BACT requirement is not contingent on completion of a *de minimis* rulemaking.

Although not entirely clear, Petitioners also appear to suggest that the

Supreme Court required EPA to complete a new rulemaking to establish a *de

minimis* threshold before it can apply the BACT requirement to greenhouse gas

emissions from "anyway" sources. *See* State/Industry Mot. at 10 & n.6; EIMG

Mot. at 3. However, as EPA explained it its motion to govern, this suggestion is

meritless. *See* EPA Mot. at 15-18.

---

[10]    *See EPA v. EME Homer City Gen.*, 134 S. Ct. 1584, 1609 (2014)
(Distinguishing facial from as-applied challenges in another CAA rulemaking
challenge, and observing that "[t]he possibility that the rule, in uncommon
particular applications, might exceed EPA's statutory authority does not warrant
judicial condemnation of the rule in its entirety.").

Simply put, the Supreme Court established no such requirement, nor did it disturb EPA's regulations that limit application of BACT to anyway sources that emit greenhouse gases in the amount of 75,000 tpy $CO2_e$ or more.  To the contrary, the Supreme Court expressly held that although EPA may no longer require a source to obtain a PSD permit based solely on its greenhouse gas emissions, "EPA may, however, *continue* to treat greenhouse gases as a 'pollutant subject to regulation under this chapter [the CAA]' for purposes of requiring BACT for 'anyway' sources."  134 S. Ct. at 2449 (emphasis added).  The Court further explained that BACT already was being applied to "anyway" sources without significant problems.  *Id.* at 2447 (noting the experience of Calpine in applying BACT for greenhouse gases).  EPA clearly cannot *continue* to apply BACT to "anyway" sources as it has been doing (and as the Supreme Court expressly stated it could) and simultaneously be *prohibited from* applying BACT to "anyway" sources until it conducts a rulemaking to determine whether a *de minimis* level of emissions for greenhouse gases is appropriate and, if so, at what level.

Through a fragmented quotation, Petitioners distort the meaning of a sentence in the Supreme Court decision that merely recognizes, based on D.C. Circuit precedent, EPA's authority to avoid applying the BACT requirement to *de minimis* levels of greenhouse gas emissions.  State/Industry Mot. at 10; 134 S. Ct. at 2449 ("However, EPA may require an 'anyway' source to comply with

22

greenhouse-gas BACT only if the source emits more than a *de minimis* amount of greenhouse gases.").  To produce their desired meaning, Petitioners must resort to reorganizing this sentence to make the "only if" modify the verb "require," while omitting the actual modifier of the verb (the term "may").  As this sentence was actually written by the Supreme Court, the object of the sentence is the following phrase: "an 'anyway' source to comply with greenhouse-gas BACT only if the source emits more than a *de minimis* amount of greenhouse gases."  The term "only if" is simply part of the description of what EPA "may require."  This sentence merely points out that EPA *may* determine that there are amounts of greenhouse gases that could be deemed *de minimis* as applied to the application of BACT and may develop regulations to implement that determination.[11]

This offhand comment by the Court about what EPA *may* do cannot be twisted into a statutorily-based prerequisite for the application of BACT.  If, as Justice Scalia has elsewhere observed, Congress does not "hide elephants in mouseholes," *Whitman v. American Trucking Association*, 531 U.S. 457, 468 (2001), then it stands to reason that the *UARG* decision, which Justice Scalia authored, did not do so either.  The Supreme Court noted no prerequisite to the

---

[11]    EPA is, in fact, separately taking steps to consider this issue.  *See* EPA Mot. at 12 n.6.

application of the unambiguous Congressional declaration that a major emitting

facility must apply BACT to "each pollutant subject to regulation under this

chapter."  42 U.S.C. § 7475(a)(4).

Indeed, the question of whether, or at what level, EPA should establish a *de*

*minimis* level for greenhouse gas emissions for the purpose of applying PSD

BACT requirements was not even before the Supreme Court.  The *only* issue on

which *certiorari* was granted was described by the Supreme Court as "whether it

was permissible for EPA to determine that its motor-vehicle greenhouse-gas

regulations automatically triggered permitting requirements under the Act for

stationary sources that emit greenhouse gases."  *UARG*, 134 S. Ct. at 2434; *see*

*also* EPA Mot. at 17.  Nothing about whether or at what level *de minimis*

thresholds should be established for the BACT requirement was raised before this

Court or the Supreme Court, nor was the appropriateness of the 75,000 tpy

threshold for applying BACT addressed in this Court's *Coalition for Responsible*

*Regulation* decision.

The Supreme Court's limited references to the potential promulgation of a

*de minimis* level of emissions only supports the view that it was not deemed by the

Court to be a prerequisite to applying BACT requirements to "anyway" sources.

In describing the *de minimis* doctrine, the Supreme Court explained that it is EPA's

option as to whether to create a *de minimis* threshold for BACT.  134 S. Ct. at 2449

("EPA *may* establish an appropriate *de minimis* threshold below which BACT is not required for a source's greenhouse gas emissions.") (emphasis added).  Never did the Court state that EPA *must* establish a de minimis threshold for BACT.  The Supreme Court further explained that it was *not* holding that the 75,000 tpy threshold for applying the BACT requirement to anyway sources was invalid because it exceeds a true *de minimis* level, or otherwise questioning the regulation establishing that threshold, but only stated that if EPA *were* to establish a *de minimis* exemption, it would need to justify both the establishment of the exemption and the selection of the *de minimis* level on proper grounds.  *Id.*

Most importantly, nowhere did the Court hold that until EPA performs a *de minimis* determination in a new rulemaking, the Agency is prohibited from applying its existing regulations requiring anyway sources to implement BACT as part of their permitting requirements.  To the contrary, in acknowledging EPA's authority to create a *de minimis* threshold, if appropriate, the Supreme Court cited and relied upon this Court's decision in *Alabama Power v. Costle*, 636 F.2d 323, 360-61, 400, 405 (D.C. Cir. 1979).  *UARG*, 134 S. Ct. at 2435 n.1, 2448-49.  In *Alabama Power,* this Court rejected a blanket exemption from PSD BACT requirements for sources emitting criteria pollutants below certain levels.  Just like the Supreme Court in *UARG*, this Court in *Alabama Power* explained that EPA could, on a proper record, establish a *de minimis* threshold below which sources

25

would not have to implement BACT. This Court found that until such a record was established, the BACT requirement applied as set forth under the statute. 636 F.2d at 403-05. Petitioners suggest the opposite result; that until EPA performs a *de minimis* determination, the BACT requirement may *not* be applied. But this is not the law of this circuit (*Alabama Power*), which was favorably cited by the Supreme Court in *UARG* as the basis for the *de minimis* doctrine.

Indeed, EPA's existing regulations already operate in exactly this manner. EPA's regulations provide that BACT applies to each pollutant emitted or increased in significant amounts. 40 C.F.R. § 52.21(j)(2)-(3). These significance levels for individual pollutants are established at 40 C.F.R. §§ 51.166(b)(23)(i) and 52.21(b)(23)(i). For pollutants not listed in this provision, *any* amount or increase in emissions is considered significant under sections 51.166(b)(23)(ii) and 52.21(b)(23)(ii). Thus, consistent with the case law on *de minimis* exceptions, the BACT requirement applies to the pollutant at any level of emissions unless and until EPA promulgates the significance level that Petitioners contend EPA must now create. And again, none of these provisions was challenged by Petitioners in this case.

Finally, it should be noted in any event that Petitioners in this case would not have any legally cognizable injury stemming from the absence of a *de minimis* level for the application of BACT for anyway sources. At present, an anyway

26

source does not need to implement BACT unless it has the potential to emit 75,000 tpy of greenhouse gases. As outlined above, under both the precedent of this Court and EPA's regulations, if sections 51.166(b)(48)(iv) and 52.21(b)(49)(iv) (which establish the 75,000 ton threshold for "anyway" sources) were to be vacated, as requested by Petitioners, then *any* amount or increase in greenhouse gas emissions would be subject to the BACT requirement until such time as EPA promulgates a significance level. 40 C.F.R. §§ 51.166(b)(23)(ii); 52.21(b)(23)(ii); 51.166(j)(2)-(3); 52.21(j)(2)-(3). Petitioners here clearly would not have had standing to argue in favor of more stringent regulation. *See Coalition for Responsible Regulation,* 684 F.3d at 144-48.

## III.  NO RELIEF IS WARRANTED ON BACT ISSUES, BUT IF ANY RELIEF IS GRANTED AT ALL, IT SHOULD AT MOST BE REMAND WITHOUT VACATUR.

For the reasons stated in EPA's motion to govern and above, no relief is warranted on issues relating to application of the BACT requirement to greenhouse gas emissions from "anyway" sources. However, if any relief is granted, it should be limited to remand without vacatur.

The standard for granting remand without vacatur has two components: (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly"), and (2) "the disruptive consequences of an interim change that may itself be changed." *Int'l Union, UMWA v. FMSHA*, 920 F.2d 960,

967 (D.C. Cir. 1990); *see also, e.g., A.L. Pharma, Inc. v. Shalala,* 62 F.3d 1484, 1492 (D.C. Cir. 1995); *Allied-Signal, Inc. v. NRC,* 988 F.2d 146, 150-51 (D.C. Cir. 1993). In this case, consideration of both of these factors clearly favors remand without vacatur.

With regard to the first factor, Petitioners overstate the scope and seriousness of the deficiencies identified by the Supreme Court with the agency actions under review. The Supreme Court "affirmed in part and reversed in part." *UARG,* 134 S. Ct. at 2449. For this and other reasons stated above, there is no doubt that EPA "chose correctly" in making the basic decision to apply BACT to greenhouse gas emissions from anyway sources. This was, after all, the Supreme Court's express holding in *UARG*, where it specified that such regulation should "continue." 134 S. Ct. at 2449. Furthermore, the Supreme Court expressly recognized that EPA may establish an emissions threshold below which the BACT requirement does not apply to greenhouses gases, so long as EPA justifies such a threshold as a *de minimis* amount. *Id.* at 2435 n. 1, 2449. Thus, the portions of EPA's PSD regulations implementing the first step of the Tailoring Rule achieve a result with which the Court found no serious deficiency. Although EPA noted in the Tailoring Rule that a *de minimis* level "could" be below 75,000 tpy, 75 Fed. Reg. 31,560, this does not demonstrate that it is not possible for EPA to substantiate this level on *de minimis* grounds after further evaluation of the matter

on remand.  *See UARG*, 134 S. Ct. at 2449 (explaining that the Court was not

holding that the 75,000-ton threshold "necessarily exceeds a true *de minimis* level,

only that EPA must justify its selection on proper grounds"); *see also Allied*

*Signal*, 988 F.2d at 151.

     With regard to the second factor, there clearly would be less disruptive

consequences from leaving step one of the Tailoring Rule and the BACT

requirement for greenhouse gases in place using the present 75,000 tpy $CO_2$e

threshold for BACT, pending further EPA rulemaking to further consider the *de*

*minimis* issue (or any other details this Court might deem significant).  Right now,

there is a predictable and smoothly-functioning permit process in place that allows

parties to obtain PSD permits necessary to authorize beginning construction of new

sources and modifications that trigger that permit requirement based on their non-

greenhouse gas emissions.

     Any decision to vacate step one of the Tailoring Rule or otherwise suspend

the application the BACT requirement to greenhouse gases would create

unnecessary uncertainty both as to the ability of sources to obtain complete PSD

permits for new sources or modifications, and as to the status of construction

authorized under previously-issued permits or covered by pending permit

applications.  This could potentially freeze planned construction projects pending

additional rulemaking, since the statutory requirement to have a pre-construction

permit applying BACT to "each pollutant subject to regulation under this chapter," 42 U.S.C. § 7475(a)(4), would still apply.  Further, as EPA previously noted, if the step one Tailoring Rule provisions, including its 75,000 ton threshold were to be vacated, the result (absent further EPA action) would be that *all* "anyway" sources emitting any amount of greenhouse gases must be subject to the BACT requirement, not that *none* of them must be, as Petitioners appear to assume.  *See* EPA Mot. at 18; *see also supra,* Part II.C.3.

Petitioners' approach would create precisely the type of "disruptive consequences [from] an interim change that may itself be changed," *International Union*, 920 F. 2d at 967, that justifies a remand without vacatur.  Initially, EPA would have to work with stakeholders to determine an interim approach to PSD permitting for "anyway" facilities in the absence of the Tailoring Rule step one provisions, taking into account the problems discussed above, while at the same time initiating new rulemaking to reinstate a threshold for applying regulations like 40 C.F.R. § 52.21(j)(2)-(3) to greenhouse gases following further consideration of the *de minimis* issue and other potential issues.  Shortly thereafter, however, this regime would presumably again change, based on the outcome of the referenced rulemaking.  There simply is no justification for this stop-and-start approach when, for the reasons discussed above, there are no "serious[] . . . deficiencies," *International Union,* 920 F.2d at 967, with the existing provision that limits the

circumstances when EPA's BACT regulations apply to greenhouse gas emissions from "anyway" sources (*i.e.,* 40 C.F.R. § 51.666(b)(48)(iv)).

For these reasons, if the Court were to grant any relief at all on the issue of greenhouse gas BACT requirements for anyway sources, it should be limited to remand without vacatur.

## **CONCLUSION**

For all the foregoing reasons, as well as those set forth in EPA's Motion to Govern, EPA respectfully requests that its Motion to Govern be granted and Petitioners' Motions to Govern be denied.

Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General

/s/   Jon M. Lipshultz
JON M. LIPSHULTZ
PERRY M. ROSEN
AMANDA SHAFER BERMAN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044
Tel: (202) 514-2191

Counsel for Respondents

Dated:  November 21, 2014

31

OF COUNSEL:

ELLIOTT ZENICK
BRIAN DOSTER
MICHAEL G. LEE
MELINA WILLIAMS
DAVID COURSEN
Office of General Counsel
U.S. Environmental Protection Agency
Washington, D.C. 20460

## **CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing Response to Motions to Govern Further Proceedings was today filed, this 21st day of November, 2014, on all counsel of record registered through the Court's CM/ECF system.

<u>/s/ Jon M. Lipshultz</u>

Jon M. Lipshultz