**ORAL ARGUMENT HELD ON FEBRUARY 28 & 29, 2012**
**DECIDED JUNE 26, 2012**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 09-1322 and consolidated cases
Nos. 10-1073 and consolidated cases
Nos. 10-1092 and consolidated cases
Nos. 10-1167 and consolidated cases

_____

COALITION FOR RESPONSIBLE REGULATION, *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*.

_____

**RESPONSE OF STATE AND ENVIRONMENTAL ORGANIZATION**
**RESPONDENT-INTERVENORS TO MOTIONS TO GOVERN**

ERIC T. SCHNEIDERMAN
*Attorney General of New York*

BARBARA D. UNDERWOOD
*Solicitor General*
STEVEN C. WU
*Deputy Solicitor General*
BETHANY A. DAVIS NOLL
*Assistant Solicitor General*
MICHAEL J. MYERS
MORGAN A. COSTELLO
*Assistant Attorneys General*
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 473-5843


Dated: November 21, 2014

SEAN H. DONAHUE*
Donahue & Goldberg, LLP
1130 Connecticut Ave., NW, Ste. 950
Washington, DC 20036
(202) 277-7085
sean@donahuegoldberg.com


*Counsel for the Env'l Defense Fund*




*Additional counsel listed on signature blocks

The State[1] and Environmental Organization[2] Respondent-Intervenors respectfully submit this joint response to the motions to govern future proceedings filed on October 21, 2014, in light of the U.S. Supreme Court's decision in *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) (*UARG*).

## I.    THE DISPOSITION PROPOSED BY EPA PROPERLY GIVES EFFECT TO THE SUPREME COURT'S DECISION

In *UARG*, the Supreme Court issued two distinct holdings concerning the trigger for stationary source permitting and the obligation to apply the best available control technology (BACT) under the Clean Air Act's Prevention of Significant Deterioration (PSD) provisions. The Court held:  (1) that, as to permitting, EPA "may not treat greenhouse gases as a pollutant for purposes of defining a 'major emitting facility' (or a 'modification' thereof) in the PSD context"; but also (2) that "EPA may * * * continue to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of requiring BACT for 'anyway' sources." 134 S. Ct. at 2449.

---

[1]  The States joining in this response are New York, California, Connecticut, Delaware, Illinois, Iowa, Maine, Maryland, Massachusetts, New Hampshire, New Mexico, Oregon, Rhode Island, Vermont, Washington, and the City of New York.

[2]  Conservation Law Foundation, Inc.; Environmental Defense Fund; Georgia ForestWatch; Indiana Wildlife Federation; Michigan Environmental Council; National Wildlife Federation; Natural Resources Council of Maine; Natural Resources Defense Council; Ohio Environmental Council; Sierra Club; Wetlands Watch; and Wild Virginia.

1

EPA's proposed disposition properly gives effect to both of these holdings. EPA proposes that the Court vacate in part and remand in part its regulations "to the extent" that the Supreme Court held such regulations are "invalid," *i.e.*, insofar as they require sources to obtain PSD or Title V permits based solely on their emissions of greenhouse gases. EPA Mot. 19–20 (Doc. 1518260).[3] EPA further requests that this Court leave undisturbed existing EPA regulations respecting PSD BACT permit requirements for greenhouse-gas emissions from "anyway" sources because nothing in the Supreme Court's decision disturbs the continued application of BACT to those sources. *Id*. at 14–18; *see also* NGO Mot. 4–6 (Doc. 1518281).

State and Environmental Organization Respondent-Intervenors therefore request that the Court adopt EPA's proposed approach.

## II. THERE IS NO BASIS TO VACATE EPA REGULATIONS IMPLEMENTING BACT PERMIT REQUIREMENTS FOR GREENHOUSE-GAS EMISSIONS FROM ANYWAY SOURCES

Petitioners' motions to govern urge this Court to go far beyond (and contradict) the Supreme Court's decision by blocking all application of BACT permitting activity related to greenhouse gases until EPA completes new rulemakings on various topics. *See* State/Industry Mot. 8–20 (Doc. 1518259); Energy-Intensive Mfrs. Mot. 3–20 (Doc. 1518311). Because the Court may only

---

[3] EPA also proposes vacatur of provisions addressing further studies in connection with the Tailoring Rule tonnage thresholds. EPA Mot. 19–20.

"reverse" challenged agency action found to be flawed, 42 U.S.C. § 7607(d)(9), petitioners' creative efforts to turn their BACT loss into a victory are meritless.

Neither this Court nor the Supreme Court invalidated EPA's regulations implementing BACT requirements for greenhouse-gas emissions from "anyway" sources. Rather, this Court held in *Coalition for Responsible Regulation v. EPA*, 684 F.3d 102, 137 (D.C. Cir. 2012), that "[b]ecause greenhouse gases are indisputably a pollutant subject to regulation under the Act, it is crystal clear that PSD permittees must install BACT for greenhouse gases." In the second part of its opinion in *UARG*, the Supreme Court "affirmed" this part of the Court's holding. 134 S. Ct. at 2447–49. Relying upon plain statutory text that "'would not seem readily susceptible [of] misinterpretation,'" *id*. at 2448 (quoting *Alabama Power Co. v. Costle*, 636 F.2d 323, 404 (D.C. Cir. 1979)), the Supreme Court upheld the application of BACT to greenhouse-gas emissions of "anyway" sources. *See* 134 S. Ct. at 2449 ("EPA may, however, continue to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of requiring BACT for 'anyway' sources.").[4]

---

[4] The separate opinions both described the seven-justice majority as having interpreted the statutory BACT provision to apply of its own force to "anyway" sources' greenhouse-gas emissions. *See* 134 S. Ct. at 2455 (Breyer, J., concurring in part) ("I agree with the Court's holding that * * * 'anyway sources' * * * must meet the 'best available control technology' requirement * * * with respect to greenhouse gas emissions."); *id*. at 2456 (noting majority's "holding that BACT applies to 'anyway' sources") (Alito, J., dissenting in part); *id*. (referring to Court's

Contrary to petitioners' claims, *see* State/Industry Mot. 12, the *UARG* Court did not declare "invalid" EPA regulations that treat greenhouse gases as a "pollutant subject to regulation" under section 165(a)(4) of the Act. Rather, the Court held EPA regulations "invalid" only "[t]o the extent" that they purport to "treat greenhouse gasesas a pollutant for purposes of defining a 'major emitting facility' * * * in the PSD context or a 'major source' in the Title V context." 134 S. Ct. at 2449.[5]

Furthermore, failing to apply BACT to greenhouse-gas emissions from "anyway" sources would violate the plain terms of the statute requiring BACT for "each pollutant subject to regulation" under the Act. 42 U.S.C. § 7475(a)(4). Section 165(a)(4) itself directly imposes on each major emitting facility the obligation to install BACT; there is no basis for the Court to block operation of that *statutory* requirement. Because petitioners fail to identify any authority that would allow this Court to enjoin EPA from continuing to apply BACT for greenhouse-gas emissions from "anyway" sources— as required by operation of the statute itself

---

"two main reasons for concluding that BACT applies to 'anyway' sources, one based on text and one based on practical considerations").

[5] Because neither the Supreme Court nor this Court found EPA's regulations relating to the application of BACT to anyway sources to be invalid, petitioners' discussions of "remand without vacatur" are misplaced. *See*, *e.g*., State/Industry Mot. 13–19 (citing *Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993)).

and as expressly allowed by the *UARG* Court—this Court lacks jurisdiction to "reverse," through vacatur, EPA regulations implementing BACT for such sources.

## III. NO FURTHER RULEMAKING IS REQUIRED TO EFFECTUATE THE STATUTORY BACT REQUIREMENT

Petitioners argue that, under the *UARG* decision, the BACT requirement cannot be applied to greenhouse-gas emissions of "anyway" sources until EPA adopts new regulations specifically providing for the application of BACT. This argument lacks any support in the statute or the Supreme Court's opinion.

### A. The Supreme Court's Opinion Did Not Alter the Self-Executing Character of Section 165(a)'s Requirements.

In service of their argument that new regulations are a necessary prerequisite to any application of BACT to greenhouse gases, petitioners assert that the *UARG* Court "reversed" on the "central issue" of whether the PSD program is "self-executing," State/Industry Mot. 4–6, and instead adopted the view that BACT "must be implemented prospectively through legislative rules." State/Industry Mot. 4. However, the *UARG* Court nowhere addressed, let alone overturned, this Court's and EPA's longstanding interpretation that section 165 permitting obligations, including the section 165(a)(4) BACT requirement, apply to sources by the force of the statute itself. As this Court has repeatedly observed, the self-executing character of section 165(b)(4) is manifest in multiple provisions of the statute.

### 1.  The BACT Requirement Applies Directly to Sources.

Since its early decisions under the PSD program, this Court has recognized that section 165, by its plain language, imposes obligations directly upon sources. Thus, in *Citizens to Save Spencer County. v. EPA,* 600 F.2d 844, 853 (D.C. Cir. 1979), this Court said that "[s]ection 165 by its terms explicitly and without qualification prohibits the construction of any major pollution-emitting facility * * * unless the substantive requirements of that section have been met." *See also id*. at 860–66 (rejecting interpretation of section 165 requirements that would have delayed their application until after state implementation plans were adopted). Similarly, *Alabama Power* emphasized that "[s]ection 165, in a litany of repetition, provides without qualification that each of its major substantive provisions shall be effective after 7 August 1977 with regard to each pollutant subject to regulation under the Act." 636 F.2d at 406; *see also id*. at 404–05.

More recently, in rejecting claims that greenhouse-gas sources would have no obligations under section 165 until state implementation plans were amended, this Court in *Texas v. EPA* concluded that "the plain text of CAA § 165(a) and § 167" establish "that the Part C permitting requirements are self-executing and unambiguously require a PSD permit setting forth emission limitations for each pollutant subject to regulation under the Act before a major emitting facility may

be constructed." 726 F.3d 180, 187 (D.C. Cir. 2013).[6] As this Court further explained:

> By its plain terms, CAA § 165(a) prohibits construction of a major emitting facility absent a Part C PSD permit that requires, *inter alia,* BACT for each pollutant subject to regulation under the Act. Its prohibition applies directly to stationary sources and requires that the permit "conform *to the requirements of this part*," *id.* § 7475(a)(1) (emphasis added), rather than the requirements of an applicable implementation plan. * * * And by requiring BACT for "*each* pollutant subject to regulation under this chapter," CAA § 165(a)(4), § 7475(a)(4) (emphasis added), CAA § 165 neither explicitly nor implicitly includes an exception for newly regulated pollutants."

*Id.* The *Texas* Court also observed that section 167 "by its plain terms grounds EPA's PSD enforcement authority in the requirements of Part C, rather than the requirements of an applicable implementation plan." *Id.* at 188; *see also id.* at 189 (contrasting section 165 with section 173(a)(1), 42 U.S.C. § 7503(a)(1)).[7]

## 2. The Supreme Court Did Not Overturn EPA's and this Court's Interpretation that the BACT Requirement Is Self-Executing.

The Supreme Court in *UARG* did not even address—let alone reject—this Court's determination that section 165(a) is self-executing, a matter of basic

---

[6] Petitions for rehearing and a petition for rehearing *en banc* have been filed by petitioners in *Texas*, asserting arguments similar to those advanced by petitioners here, including the argument that the *UARG* decision holds that section 165(a) is not self-executing. Nos. 10-1425, *et al*. (Docs. 1513534, 1513529).

[7] And the *Texas* Court noted that the Supreme Court, in *Alaska Department of Environmental Conservation v. EPA*, 540 U.S. 461 (2004), had likewise "described the PSD permitting requirements as applying directly to stationary sources through CAA § 165(a)." *Texas*, 726 F.3d at 188–89 (citing *Alaska*, 540 U.S. at 472–73, 484-85).

statutory architecture that has implications not just for greenhouse gases, but for all air pollutants regulated under the PSD program. The *UARG* Court did not take issue with any aspects of this Court's analysis in *Spencer County*, *Alabama Power*, or *Texas*, concerning the operation of sections 165 and 167, and did not itself advance any interpretation of the statute that would require rulemaking as a prerequisite to application of the section 165(a)(4) BACT requirement.

Relying largely upon EPA's own record concerning the extreme implications of adhering to the statutory tonnage thresholds that are part of the statutory source definitions, 134 S. Ct. at 2439–47, the Supreme Court decided that EPA had been wrong to conclude that "any air pollutant" in the section 169(1) definition of the "major emitting facilities" that are subject to PSD must include, or reasonably could include, greenhouse gases. *Id.* at 2449.

What rules a statutory provision establishes to govern the conduct of regulated entities, and whether those statutory rules are binding in the absence of administrative implementing regulations, are distinct questions. The question resolved against EPA in *UARG* was the substantive one of whether the section 169(1) PSD source definition, and hence the obligation to obtain a PSD permit, can apply based only on a source's greenhouse-gas emissions. The Supreme Court majority's analysis of the scope of "any air pollutant" in section 169(1) is entirely consistent with the view that section 165(a) applies directly to sources.

8

Had the Supreme Court intended to overturn a substantial, decades-old body of administrative and judicial precedent concerning the effect of section 165(a)—and to bar EPA from the continued application of BACT to greenhouse gas sources pending additional rulemaking—it surely would have said so. It did not. Instead, the Court overturned as unreasonable EPA's interpretation that "any air pollutant" in the section 169(1) source definition includes greenhouse gases, while expressly allowing the "continued" operation of the section 165(a)(4) BACT requirement. 134 S. Ct. at 2449. The Court did not hold that section 165(a)(4) lacks legal effect (whether for greenhouse gases, or any other class of air pollutants) until EPA adopts implementing regulations.

Indeed, to the limited extent the *UARG* decision touches on the question at all, its discussion tracks this Court's characterizations concerning the direct effectiveness of section 165(a). In rejecting EPA's effort to limit covered sources by imposing administrative limits on the PSD source definition, the Court observed that the Tailoring Rule "purports to alter" the PSD "statutory permitting requirements" and "to establish with the force of law that otherwise-prohibited conduct will not violate the Act." *Id.* at 2445. The Court further explained that:

> This alteration of the statutory requirements was crucial to EPA's "tailoring" efforts. Without it, small entities with the potential to emit greenhouse gases in amounts exceeding the statutory thresholds would have remained subject to citizen suits—authorized by the Act—to enjoin their construction, modification, or operation * * * .

9

*Id*.; *see also id*. at 2435 ("To qualify for a permit, the facility * * * must comply with emissions limitations that reflect the 'best available control technology' (or BACT) for 'each pollutant subject to regulation under' the Act. § 7475(a)(4).").

Furthermore, the very same paragraph from this Court's *Alabama Power* decision that the *UARG* Court quoted as affirming that the BACT provision "would not seem readily susceptible to misinterpretation," 636 F.2d at 404, contains an emphatic affirmation of the self-executing character of section 165(a)(4).[8] Had the Supreme Court meant to overturn this Court's understanding of how the PSD statute works, it would surely have said so, rather than repeatedly citing *Alabama Power*. Thus, the Supreme Court did not, as petitioners argue, *see* State/Industry Mot. 7, "reject" this Court's decisions holding that section 165(a) applies directly to sources.

---

[8] Specifically, this Court stated:

> The only administrative task apparently reserved to the Agency in executing these provisions [including BACT] is to identify those emission standards, standards of performance, and pollutants subject to regulation under the Act *which are thereby comprehended by the statute. The language of the Act does not limit the applicability of PSD only to one or several of the pollutants regulated under the Act*, establish any special timetable for the regulation of particular pollutants, or set high thresholds for potential emissions of each pollutant before a major emitting facility becomes subject to PSD for that pollutant.

636 F.2d at 404 (emphases added).

### B. Nothing in the Supreme Court's Opinion Requires Further Rulemaking Before BACT Applies to Greenhouse-Gas Emissions from Major Emitting Facilities.

The Supreme Court in *UARG* squarely upheld the lawfulness of applying BACT to greenhouse-gas emissions from sources that qualify as "major emitting facilities" for purposes of PSD. And the Court made clear that this aspect of EPA's interpretation of the statute could "continue" under its ruling. 134 S. Ct. at 2449. The Supreme Court did not hold that further rulemaking was necessary before EPA could "continue" to require BACT for greenhouse-gas emissions from sources covered under PSD. Nowhere in its decision did the *UARG* Court place conditions on or otherwise qualify its holding that EPA may "continue" to require BACT.[9]

Petitioners nonetheless contend that the Supreme Court's initial holding that greenhouse gases are not "air pollutants" for purposes of the PSD and Title V source definitions had the effect of invalidating regulations that are, in petitioners'

---

[9] Petitioners seek to override the central environmental benefit safeguarded by the Supreme Court's disposition. As the Court noted, applying BACT to "anyway" sources would mean coverage of an estimated 83 percent of stationary source greenhouse-gas emissions that would be classified as major using the statutory thresholds for greenhouse gases, whereas the "non-anyway" emissions affected by the Court's first holding would represent a mere three percent of additional such stationary source emissions. 134 S. Ct. at 2438–39; *see also* Denniston, Lyle *Opinion Analysis: EPA Mostly Wins, But with Criticism*, SCOTUSblog (June 23, 2014), *available at* http://www.scotusblog.com/2014/06/opinion-analysis-epa-mostly-wins-but-with-criticism/ (discussing this aspect of the decision and quoting Justice Scalia's comment in handing down decision that "EPA is getting almost everything it wanted in this case").

view, necessary for EPA to apply BACT to greenhouse-gas emissions. State/Industry Mot. 8–10. This argument is wrong. EPA's regulations are not the source of the legal obligation to install BACT. Instead, because the *statute* requires application of BACT to "each pollutant subject to regulation under [the Act]" that is emitted by a major emitting facility, once EPA began regulating greenhouse-gas emissions from motor vehicles under Title II of the Act, "anyway" sources were required to satisfy BACT as to their greenhouse-gas emissions. Thus, vacating EPA's regulations would not have the BACT-disabling effect petitioners seek.[10]

Petitioners also claim that the portion of the Supreme Court's ruling upholding application of BACT to greenhouse gases has the effect of blocking the application of BACT until EPA completes further rulemaking. State/Industry Mot. 11–12. Petitioners point to passages in the opinion in which the Court discussed the petitioners' "concerns about 'unbounded' regulatory authority," 134 S. Ct. at 2448, and in which the Court made clear that it was not pre-approving all possible ways in which BACT for greenhouse gases might be applied, *id.* at 2448–49.

This argument is meritless. The *UARG* Court, in discussing BACT, did not require that EPA proceed to promulgate regulations to address the petitioners'

---

[10] Insofar as they treat greenhouse gases differently from all other regulated air pollutants, the regulations merely have the effect of *exempting* greenhouse-gas emissions that would otherwise be subject to BACT. *See* 40 C.F.R. § 51.166(b)(49)(i)–(v); EPA Mot. 18 & n.9; *infra*, IV.B.

concerns, let alone suspend operation of the BACT requirement pending final issuance of such regulations. As the Supreme Court is well aware, BACT is applied on a "case-by-case" basis, with guidance from EPA and state agencies, and with administrative and then judicial review of individual permitting decisions. *See Alaska*, 540 U.S. at 472–81, 484–87.

Insofar as the Supreme Court's discussion was intended to guide EPA's application of BACT to greenhouse-gas sources, the Court surely was referring to the regular, "case-by-case" process through which BACT is applied. *See* 42 U.S.C. § 7479(3) (BACT entails application of statutory factors by "the permitting authority, on a case-by-case basis"). The "important limitations on BACT" the Supreme Court cited emerged from that very process. *UARG*, 134 S. Ct. at 2448. The Court's reference to the "future regulatory application of BACT," *id*. at 2449, naturally refers to the regular application of BACT in "case-by-case" adjudicatory proceedings, subject to periodic EPA and state regulatory guidance; it surely was not meant as a prohibition against applying the BACT requirement pending the completion of a new rulemaking.[11]

---

[11] There is, moreover, no indication in the *UARG* opinion that the Court intended to override the agency's normal discretion to choose between rulemaking and adjudication. *See NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 668 (1976); *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947).

13

Nor do the Supreme Court's statements regarding the possibility of establishing a "*de minimis*" threshold for greenhouse-gas emissions, 134 S. Ct. at 2449, justify an order from this Court prohibiting EPA from continuing to apply BACT to the greenhouse-gas emissions from "anyway" sources. *See* State/Industry Mot. 10. After noting that EPA has established *de minimis* thresholds for other pollutants, 134 S. Ct. at 2435 n.1, and that EPA's 75,000 ton per year threshold for greenhouse gases had not been established as a *de minimis* requirement, *id*. at 2438 n.3, the Court said that EPA "may require an 'anyway' source to comply with greenhouse-gas BACT only if the source emits more than a *de minimis* amount of greenhouse gases," and that EPA "may establish an appropriate *de minimis* threshold below which BACT is not required for a source's greenhouse-gas emissions," *id*. at 2449.[12]

Thus, nothing in this passage suggests that EPA is required to adopt a *de minimis* threshold—only that it "may" do so—or that the BACT requirement itself is inoperative until EPA has decided whether any minimal emitters should be exempted. The Supreme Court was keenly aware that BACT had been applied to

---

[12] The phrase "only if" here, in context, naturally refers to the terms of the *de minimis* doctrine itself  and that the matter is within EPA's discretion is clear from the Court's repeated uses of the term "may." The authority the Supreme Court cited for a *de minimis* departure from the statutory thresholds (which the *UARG* Court had just explained, in its first holding, are a fully binding part of the statute) was the rationale adopted by this Court in *Alabama Power*—a doctrine that is clearly a matter of agency discretion.

14

greenhouse gases for years, *see id*. at 2447 (citing Calpine amicus brief describing company's experience with application of BACT to greenhouse-gas emissions); the Court's statement that EPA "may * * * continue to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of requiring BACT for 'anyway' sources," *id*. at 2449, conveys no hint of any intent to halt BACT for greenhouse gases pending further rulemaking.[13]

The Supreme Court's references to this Court's discussion of the *de minimis* issue in *Alabama Power*, 636 F.2d at 403–05, further undermine petitioners' position. *See* 134 S.Ct. at 2435 n.1. In *Alabama Power*, this Court held that EPA had the authority to adopt *de minimis* thresholds in order to establish the amount of a pollutant that a source would need to emit for it to be subject to the BACT requirement, if properly justified. *Alabama Power*, 636 F.2d at 405. In the process, the *Alabama Power* Court emphasized the controlling effect and obligatory nature of the statutory language requiring BACT. *Id.* at 404–05. The *Alabama Power* Court found that EPA's *de minimis* rule was inadequate, *id.* at 405, but neither the *Alabama Power* Court, nor any other, has held that EPA has a statutory obligation

---

[13] Petitioners also fail to identify any basis for their assumption that, in addressing the *de minimis* issue, EPA must proceed by rulemaking rather than adjudication.

15

to establish *de minimis* thresholds, nor authorized delay in the application of the underlying statutory requirement while the agency considered a *de minimis* rule.[14]

There is, in short, no sign that the *UARG* Court intended to mandate a hiatus in the application of BACT while EPA undertakes additional rulemaking.

## IV. VACATING EPA REGULATIONS WOULD NOT PROVIDE PETITIONERS ANY RELIEF, BUT RATHER WOULD CAUSE UNDUE DISRUPTION, CONFUSION AND DAMAGE TO PUBLIC HEALTH AND THE ENVIRONMENT

### A. Petitioners Lack Standing Because the Relief They Request Would Increase, Rather Than Relieve, Regulatory Burdens.

The source of the BACT obligation that petitioners seek to enjoin is not EPA's regulations, but section 165(a)(4) of the Act itself. Absent a constitutional claim, this Court lacks authority to enjoin operation of the Act itself. Thus, the relief sought by movants at most would merely "vacate" the provisions of the Tailoring Rule, 40 C.F.R. §§ 51.166(b)(48)(iv) and 52.21(b)(49)(iv), that establish

---

[14] As the Supreme Court recognized, EPA did not design the 75,000-ton threshold in the current regulations as a *de minimis* threshold, and therefore did not purport to satisfy *Alabama Power*'s requirements, 134 S. Ct. at 2449; *see also id.* at 2435 n.1, 2438 n. 3. But the *UARG* Court also clearly recognized that the legality of that threshold was not before it. *Id.* at 2449. Further, particularly in light of the Court's explicit holding that EPA may "continue" to require BACT for greenhouse gas emissions from "anyway" sources, the Court's prior observation that EPA would have to justify any *de minimis* threshold on "proper grounds," *id.*, cannot reasonably be interpreted as a basis for blocking the application of BACT to greenhouse gases, which would result in a far greater derogation of the statutory BACT obligation.

a 75,000-ton per year $CO_2e$ threshold for BACT. This regulatory threshold *narrowed* the number of sources subject to the PSD BACT requirements for greenhouse-gas emissions. If these regulations are vacated, then any amount of or increase in greenhouse-gas emissions by a major emitting facility would be subject to the BACT requirement, which means that *more* sources would be subject to BACT. *See* EPA Mot. 18 n.9.

Because vacatur of the Tailoring Rule threshold for BACT for "anyway" sources would not redress any injury alleged by petitioners, but would actually increase it, petitioners lack standing to challenge EPA's regulations. *See Chamber of Commerce v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011).

### B. States Have Fully Implemented Phase I of the Tailoring Rule and the Relief Sought by Petitioners Would Create Confusion Regarding Settled Matters of State Permitting.

The PSD program is administered largely by the states, and in a few states, by EPA itself. Once greenhouse-gas emissions became "subject to regulation" by virtue of the Vehicle Rule, EPA and state permitting authorities undertook certain actions to adapt their permitting processes for greenhouse gases.[15] States have

---

[15] Many states' PSD programs automatically updated to include greenhouse gases as a newly-regulated pollutant. *See* 75 Fed. Reg. 77,698, 77,702 (Dec. 13, 2010). Other states amended their regulations and submitted revised state implementation plans to ensure that emitters of greenhouse gases could obtain the appropriate permits. *See, e.g.*, 78 Fed. Reg. 63,383 (Oct. 24, 2013) (Rhode Island); 77 Fed. Reg. 60,907 (Oct. 5, 2012) (Vermont); OR. ADMIN. R. 340-224-0010(5) (Oregon).

since been administering the PSD permitting program for stationary sources of greenhouse-gas emissions under the Tailoring Rule and have been able to do so without substantial difficulties. In the almost four years since greenhouse gases became "subject to regulation," state and federal permitting authorities have issued numerous permits requiring BACT for greenhouse-gas emissions from "anyway" sources. Just like for other pollutants, BACT review for greenhouse-gas emissions is determined "on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs." 42 U.S.C. § 7479(3).

The pollution control measures that have been required pursuant to such BACT reviews have not been unduly disruptive or unreasonably costly. Because many pollution controls simultaneously reduce both greenhouse-gas emissions as well as other pollutants already regulated by the PSD program, emitters of greenhouse gases are often able to satisfy their new PSD obligations by applying or strengthening control measures that they would have been required to adopt in any event.[16] The PSD permits issued have built on experience developed throughout

---

[16] For example, in Iowa, a nitric acid plant received a PSD permit after installing a pollution-control system that allowed it to reduce emissions of both nitrous oxide (a greenhouse gas) and nitrogen oxide (a NAAQS pollutant). *See* Iowa Dep't of Natural Res., Air Quality Constr. Permit, Iowa Fertilizer Co., Permit Nos. 12-A-380-P & 12-A-380-P1, *available at* https://programs.iowadnr.gov/airqualityconstructionpermits/Pages/ConstructionPermit/SearchResult.aspx.

the relevant industries to yield facilities that operate in a less polluting way, and have done so at reasonable cost.[17]

While some changes to state regulations and to a limited number of permits issued to sources no longer covered under the PSD program may be necessary in response to the Supreme Court's decision, it would be vastly more disruptive to state PSD programs were this Court to vacate EPA regulations relating to BACT for greenhouse-gas emissions from "anyway" sources. Vacatur would create regulatory uncertainty for state agencies and the regulated community, because constructing or modifying an "anyway" source without BACT requirements for greenhouse gases would remain unlawful under the statute. And the status of previously-issued permits to "anyway" sources containing BACT limits would be called into question.

---

[17] For example, a new natural-gas-fired power plant in Maryland will meet its BACT requirement for greenhouse gases by using high-efficiency combined cycle turbines that also reduce the facility's costs. *See* Md. Pub. Serv. Comm'n, Envtl. *Review of the Proposed Modification to the CPV St. Charles Project (Draft)*, PSC Case No. 9280, Item 39 (9280-CPVERD) (July 9, 2012), *available at* http://webapp.psc.state.md.us/Intranet/casenum/caseform_new.cfm (search case number). Similarly, the PSD permit for a replacement cement kiln in New York requires the facility to modernize the kiln design and manufacturing process, which will increase production and use less fuel, thereby cutting greenhouse gas emissions by 40% and reducing the facility's costs. N.Y. State. Dep't of Envtl. Conservation, State Envtl. *Quality Review Findings Statement*, Lefarge Ravena Plant Modernization, at 13-14 *available at* http://www.dec.ny.gov/docs/permits_ej_operations_pdf/laffindings.pdf.

Further, vacating EPA's regulations implementing BACT for greenhouse-gas emissions for "anyway" sources until EPA promulgates additional regulations, as requested by petitioners, would have serious, long-term harmful impacts on public health and the environment. During the interim period while EPA proposes and finalizes any such regulations, many large stationary sources of greenhouse gases likely would escape the statutory requirement of a pre-construction permit containing BACT controls for such emissions. Stationary sources are the primary source of U.S. anthropogenic greenhouse-gas emissions. Once constructed or modified, such large sources might operate for many decades without greenhouse-gas emission controls. Because  greenhouse gases remain in the atmosphere with their heat-increasing properties for decades to centuries, the long term effect of even one year's worth of these emissions from entities escaping regulation will have an effect that will be felt for hundreds of years. Under such circumstances, vacatur is not appropriate.

## CONCLUSION

The Court should grant the relief as requested in EPA's motion to govern, and otherwise deny or dismiss all of the petitions for review.

Respectfully submitted,

FOR THE STATE OF NEW YORK

ERIC T SCHNEIDERMAN
*ATTORNEY GENERAL*

/s/ Morgan A. Costello
Barbara D. Underwood
*Solicitor General*
Steven C. Wu
*Deputy Solicitor General*
Bethany A. Davis Noll
Assistant Solicitor General
Michael J. Myers
Morgan A. Costello
*Assistant Attorneys General*
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 473-5843

FOR THE STATE OF
CALIFORNIA

KAMALA D. HARRIS
*ATTORNEY GENERAL*
Robert W. Byrne
*Senior Assistant Attorney General*
Gavin G. McCabe
*Supervising Deputy Attorney General*
Raissa Lerner
*Deputy Attorney General*
1515 Clay Street
Oakland, CA 94612
(510) 622-2100

/s/ Peter Zalzal[18]
SEAN H. DONAHUE
Donahue & Goldberg, LLP
1130 Connecticut Ave., NW, Ste. 950
Washington, DC 20036
(202) 277-7085
sean@donahuegoldberg.com

HOWARD I. FOX
Earthjustice
1625 Mass. Ave., NW, Suite 702
Washington, DC 20036
(202) 667-4500

GRAHAM G. MCCAHAN
VICKIE L. PATTON
PETER ZALZAL
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302
(303) 447-7216
pzalzal@edf.org

*Counsel for the Env'l Defense Fund*

---

[18] Pursuant to ECF-3(B) of this Court's Administrative Order Regarding Electronic Case Filing (May 15, 2009), counsel hereby represents that the other parties listed in the signature blocks have consented to the filing of this brief.

21

FOR THE STATE OF CONNECTICUT

GEORGE JEPSEN
*ATTORNEY GENERAL*
Kimberly P. Massicotte
Scott N. Koschwitz
*Assistant Attorneys General*
Office of the Attorney General
P.O. Box 120, 55 Elm Street
Hartford, CT 06141-0120
(860) 808-5250

FOR THE STATE OF DELAWARE

JOSEPH R. BIDEN, III
*ATTORNEY GENERAL*
Valerie M. Edge
*Deputy Attorney General*
Delaware Department of Justice
102 West Water Street, 3d Floor
Dover, DE 19904
(302) 739-4636

FOR THE STATE OF ILLINOIS

LISA MADIGAN
*ATTORNEY GENERAL*
Matthew J. Dunn
James P. Gignac
Gerald T. Karr
*Assistant Attorneys General*
69 West Washington Street, Suite 1800
Chicago, Illinois 60602
(312) 814-3369

FOR THE STATE OF IOWA

THOMAS J. MILLER
*ATTORNEY GENERAL*
David R. Sheridan
*Assistant Attorney General*
Environmental Law Division
Iowa Department of Justice
Lucas State Office Building
321 E. 12th Street, Ground Flr.
Des Moines, IA 50319
(515) 281-5351

FOR THE STATE OF MAINE

JANET T. MILLS
*ATTORNEY GENERAL*
Gerald D. Reid
*Natural Resources Division Chief*
6 State House Station
Augusta, ME 04333
(207) 626-8800

FOR THE STATE OF MARYLAND

DOUGLAS F. GANSLER
*ATTORNEY GENERAL*
Mary Raivel
Roberta R. James
*Assistant Attorneys General*
Department of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
(410) 537-3035

FOR THE COMMONWEALTH OF
MASSACHUSETTS

MARTHA COAKLEY
*ATTORNEY GENERAL*
Melissa A. Hoffer
*Assistant Attorney General*
Environmental Protection Division
Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1518
(617) 763-2322

FOR THE STATE OF NEW
HAMPSHIRE

JOSEPH A. FOSTER
*ATTORNEY GENERAL*
K. Allen Brooks
*Senior Assistant Attorney General*
Chief, Environmental Protection Bureau
33 Capitol Street
Concord, NH 03301
(603) 271-3679

FOR THE STATE OF NEW MEXICO

GARY K. KING
*ATTORNEY GENERAL*
Tannis Fox
*Assistant Attorney General*
Office of the Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
(505) 827-6000

FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
*ATTORNEY GENERAL*
Paul Garrahan
*Acting Attorney-in-Charge*
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4593

FOR THE STATE OF RHODE ISLAND

PETER KILMARTIN
*ATTORNEY GENERAL*
Gregory S. Schultz
*Assistant Attorney General*
Rhode Island Department of Attorney
General
150 South Main Street
Providence, RI 02903
(401) 274-4400

FOR THE STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL
THEA SCHWARTZ
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-2359

FOR THE STATE OF WASHINGTON

ROBERT W. FERGUSON
*ATTORNEY GENERAL*
Leslie R. Seffern
*Assistant Attorney General*
Office of the Attorney General
P.O. Box 40117
Olympia, WA 98504-0117
(360) 586-4613

DAVID DONIGER
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, DC 20005
(202) 289-6868
*Counsel for the Natural Resources Defense Counsel*

FRANK W. RAMBO
MORGAN BUTLER
Southern Env'l Law Center
201 West Main Street, Suite 14
Charlottesville, VA 22902
(434) 977-4090
*Counsel for Georgia ForestWatch, Wetlands Watch, and Wild Virginia*

FOR THE CITY OF NEW YORK

MICHAEL A. CARDOZO
CORPORATION COUNSEL FOR THE CITY OF NEW YORK
Carrie Noteboom
Christopher King
*Assistant Corporation Counsel*
100 Church Street
New York, New York 10007
(212) 788-0771

ANN B. WEEKS
Clean Air Task Force
18 Tremont Street, Suite 530
Boston, MA 02108
(617) 624-0234
*Counsel for Conservation Law Foundation, Inc., Indiana Wildlife Federation, Natural Resources Council of Maine, Ohio Environmental Council, and Michigan Environmental Council*

JOANNE SPALDING
NATHAN MATTHEWS
Sierra Club
85 Second Street, Second Floor
San Francisco, CA 94105
(415) 977-5500
*Counsel for the Sierra Club*

JAMES MURPHY
National Wildlife Federation
149 State Street Montpelier, VT 05602
(802) 552-4325
*Counsel for National Wildlife Federation*

24

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing RESPONSE OF STATE AND ENVIRONMENTAL RESPONDENT-INTERVENORS TO MOTIONS TO GOVERN was served, this 21st day of November, 2014, on all registered counsel, through the Court's CM/ECF system.

> */s/ Peter Zalzal*
> PETER ZALZAL
> Environmental Defense Fund
> 2060 Broadway, Suite 300
> Boulder, CO 80302
> (303) 447-7216
> pzalzal@edf.org
> *Counsel for Environmental Defense Fund*

Dated: November 21, 2014