ORAL ARGUMENT HELD FEBRUARY 28 & 29, 2012
DECIDED JUNE 26, 2012

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| COALITION FOR RESPONSIBLE REGULATION, INC., *et al.*, *Petitioners*, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, *Respondent*. | No. 09-1322 (consolidated with Nos. 10-1024, 10-1025, 10-1026, 10-1030, 10-1035, 10-1036, 10-1037, 10-1038, 10-1039, 10-1040, 10-1041, 10-1042, 10-1044, 10-1045, 10-1046, 10-1234, 10-1235, 10-1239, 10-1245, 10-1281, 10-1310, 10-1318, 10-1319, 10-1320, and 10-1321) <br><br> **COMPLEX** |
| COALITION FOR RESPONSIBLE REGULATION, INC., *et al.*, *Petitioners*, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, *Respondent*. | No. 10-1073 (consolidated with Nos. 10-1083, 10-1099, 10-1109, 10-1110, 10-1114, 10-1118, 10-1119, 10-1120, 10-1122, 10-1123, 10-1124, 10-1125, 10-1126, 10-1127, 10-1128, 10-1129, 10-1131, 10-1132, 10-1145, 10-1147, 10-1148, 10-1199, 10-1200, 10-1201, 10-1202, 10-1203, 10-1206, 10-1207, 10-1208, 10-1210, 10-1211, 10-1212, 10-1213, 10-1216, 10-1218, 10-1219, 10-1220, 10-1221, and 10-1222) <br><br> **COMPLEX** |

| | |
|---|---|
| COALITION FOR RESPONSIBLE REGULATION, INC., *et al.*, <br>          *Petitioners,* <br><br>     v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, <br>          *Respondent.* | No. 10-1092 (consolidated with Nos. 10-1094, 10-1134, 10-1143, 10-1144, 10-1152, 10-1156, 10-1158, 10-1159, 10-1160, 10-1161, 10-1162, 10-1163, 10-1164, 10-1166, and 10-1182) <br><br> **COMPLEX** |
| AMERICAN CHEMISTRY COUNCIL, *et al.*, <br>          *Petitioners,* <br><br>     v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br>          *Respondents.* | No. 11-1167 (consolidated with Nos. 10-1168, 10-1169, 10-1170, 10-1173, 10-1174, 10-1175, 10-1176, 10-1177, 10-1178, 10-1179, and 10-1180) <br><br> **COMPLEX** |

**JOINT RESPONSE OF STATE AND INDUSTRY PARTIES TO MOTIONS TO GOVERN FUTURE PROCEEDINGS FILED BY RESPONDENT ENVIRONMENTAL PROTECTION AGENCY AND ENVIRONMENTAL ORGANIZATION RESPONDENT-INTERVENORS**

In its motion to govern future proceedings, the U.S. Environmental Protection Agency ("EPA" or the "Agency") concedes, as it must, that as a result of *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) ("*UARG*"), its Prevention of Significant Deterioration ("PSD") and Title V rule provisions must be "vacated to the extent they require a stationary source to obtain" a PSD or Title V permit, where greenhouse gases ("GHGs") "are the only pollutant" (i) that a source "emits or has the potential to emit above … major source thresholds," or (ii) with respect to PSD, "for which there is a significant net emissions increase from a modification."  EPA Motion at 19-20 (Doc. No. 1518258).[1]  EPA also acknowledges that, with these provisions vacated, the Agency will be required to "consider … further revisions to its regulations … in light of *Utility Air Regulatory Group v. EPA,* 134 S. Ct. 2427 ["*UARG*"]."  In short, all agree that EPA's current program for regulation of GHG emissions—as adopted in the Tailoring Rule and other challenged EPA rulemakings—is fundamentally flawed.

Nevertheless, through fixation on one word in the opinion—"continue"—and repetition of that word in contexts of EPA's creation, *see*, *e.g.*, *id.* at 3-4, 8, 10, 15, 17, EPA tries to transform rejection into partial ratification of EPA's rules.  As EPA sees it, the Supreme Court's decision "cannot be read as anything other than an affirmation of this Court's determinations that the [PSD] BACT ["best available

---

[1] Environmental Organization Respondent-Intervenors' motion to govern future proceedings (Doc. No. 1518280) largely reiterates in summary fashion arguments in EPA's motion.  Thus, this response also addresses those parties' motion.

control technology"] requirement applies to greenhouse gases *automatically by operation of the Clean Air Act*." *Id.* at 14 (emphasis added). EPA would thus read the Court's opinion as expressly approving of the Agency's GHG PSD regulations, although (according to EPA) only insofar as they result in application of BACT to "anyway" sources (*i.e.,* those sources that are also subject to PSD for emissions of non-GHG pollutants that trigger PSD).

Not so. As explained in the State, Industry, and Public Interest Parties' Joint Motion To Govern Future Proceedings (Doc. No. 1518254) ("State/Industry Motion") and the Energy-Intensive Manufacturers Group's Motion To Govern Future Proceedings ("EIM Motion") (Doc. No. 1518310), while EPA claims a resounding victory, the Supreme Court in fact *rejected* the "automatic trigger" interpretation of the PSD program on which EPA's GHG applicability rules were exclusively based. As those motions explain, EPA's Tailoring Rule did *not* contain a BACT program for anyway sources. In fact, during the Tailoring Rule rulemaking, EPA "reject[ed]" just such a program, *see* 75 Fed. Reg. 31,514, 31,560-62 (June 3, 2010), by defining GHG "major emitting facilities" and GHG "modifications" as the trigger for a BACT review requirement. Those "applicability" provisions were "invalid[ated]" by the Supreme Court. *UARG*, 134 S. Ct. at 2449.

Because the Supreme Court declared "invalid" the key triggering provisions of EPA's PSD GHG regulatory apparatus, there is no PSD triggering mechanism for *any*

purpose—including BACT—in the absence of further rulemaking. As a result, there is nothing left for this Court to do but to give effect to the Supreme Court's mandate.

The following provisions of the Tailoring Rule are "invalid" because they "treat greenhouse gases as a pollutant for purposes of defining a 'major emitting facility' (or a 'modification' thereof) in the PSD context or a 'major source' in the Title V context" (*id.*):

(i)    40 C.F.R. §§ 51.166(b)(48)(iv) and (v), 52.21(b)(49)(iv) and (v) (both defining "major emitting facility" and "modification" for PSD based on GHG emissions);

(ii)    40 C.F.R. §§ 70.2, 71.2 (defining "major source" in reference to "subject to regulation," which makes GHGs at or above 100,000 tons per year ("tpy") (carbon dioxide equivalent ("$CO_2e$")) a Title V pollutant); and

(iii)    40 C.F.R. §§ 52.22, 70.12, 71.13 (requiring EPA to consider further phasing-in of PSD and Title V requirements for GHGs at lower GHG emission thresholds).

Finally, EPA would need to revise, as appropriate, provisions of the Tailoring Rule that were not invalidated by *UARG* (40 C.F.R. §§ 51.166(b)(48)(i)-(iii), 51.21(b)(49)(i)-(iii)) if EPA decides to undertake rulemaking to develop a BACT requirement for anyway sources.

## ARGUMENT

Under the Clean Air Act ("CAA" or "the Act") and EPA's regulations, PSD permit requirements apply to (i) "major emitting facilities" that "emit, or have the potential to emit," a pollutant above an annual emission threshold, and (ii) "major modifications" of those facilities resulting from a "significant net increase" in emissions. CAA §§ 169(1), 169(2)(C), 111(a)(4), 42 U.S.C. §§ 7479(1), 7479(2)(C), 7411(a)(4).[2] As discussed below, the Tailoring Rule established "major emitting facility" or "major modification" GHG applicability thresholds that triggered BACT and other PSD permit requirements for GHG emissions. The Supreme Court's invalidation of those applicability thresholds eliminated the only provisions in EPA's rules requiring regulation of GHG emissions at *any* source, including anyway sources. Although *UARG* affirmed that EPA could "permissibl[y]" interpret CAA section 165(a)(4), 42 U.S.C. § 7475(a)(4), to require BACT for GHG emissions from anyway sources, *UARG*, 134 S. Ct. at 2448, it also confirmed that section 165(a) is not self-executing as a *Chevron* Step One matter and that, if EPA wishes to adopt a GHG

---

[2] The Act uses the phrase "emits, or has the potential to emit" *only* in the context of defining source applicability. CAA §§ 169(1), 302(j), 42 U.S.C. § 7479(1), 7602(j); 40 C.F.R. § 51.166(b)(1)(i)(*a*). Similarly, the regulatory term "significant net increase" in emissions is used *only* in the context of defining applicability of PSD requirements to "modifications." 40 C.F.R. § 51.166(b)(2)(i) (defining "major modification" in reference to a "significant net emissions increase"); *id.* § 51.166(b)(48)(iii) (defining "emissions increase" for GHG applicability purposes as requiring a "significant net emissions increase").

BACT program, it must do so through further rulemaking.  Accordingly, any GHG

BACT requirements for anyway sources must await rulemaking.

## I.    The Supreme Court Did Not Uphold an "Automatic Trigger" for PSD for BACT or Any Other Purpose.

EPA's PSD Tailoring Rule consists of five paragraphs.  40 C.F.R. §§

51.166(b)(48)(i)-(v), 52.21(b)(49)(i)-(v).  Paragraph (i) identifies the specific subset of

GHGs that EPA decided to regulate under PSD.  Paragraph (ii) provides a common

unit of measurement (called "$CO_2e$") for determining a source's GHG emissions in

tpy.  Consistent with the PSD "major modification" applicability trigger for

conventional (non-GHG) pollutants, paragraph (iii) provides that the term "emissions

increase" means both a "significant emissions increase" and a "significant net

emissions increase" in GHG emissions.  *See* 40 C.F.R. §§ 52.21(b)(3), (23).  Paragraph

(iii) also defines the GHG emission level that is "significant" for PSD air quality and

control technology (*i.e.*, BACT) review as "75,000 tpy $CO_2e$ instead of … the [any-

increase] value in paragraph (b)(23)(ii) of this section."[3]  Finally, paragraphs (iv) and

(v) establish PSD permit applicability triggers for sources emitting GHGs.

---

[3] For major sources or modifications that trigger a PSD applicability threshold, the only pollutants that are subject to PSD requirements are those emitted in "significant" amounts. *See, e.g.,* 40 C.F.R. §§ 52.21(j)(2), (3) (BACT), 52.21(m) (air quality analysis). "Significance levels," in tons of emissions per year, are listed in 40 C.F.R. § 52.21(b)(23)(i) for conventional pollutants.  For pollutants (apart from GHGs, *see id.* § 52.21(b)(49)(iii); *see also* Argument II *infra*) that are not listed in 40 C.F.R. § 52.21(b)(23)(i), section 52.21(b)(23)(ii) of the regulations defines significant as "any emissions rate" increase.

More specifically, paragraphs (iv) and (v) define (a) the amount of GHGs a facility must "emit" or "have the potential to emit" to be a "major emitting facility," and (b) the amount of "increase[d]" GHG emissions that may constitute a GHG major "modification." Paragraph (iv) applies only to GHG "major emitting facilities" and GHG major "modifications" that are also major emitting facilities or major modifications for conventional pollutants. The paragraph (iv) GHG "major emitting facility" threshold is 75,000 tpy, and the paragraph (v) GHG "major emitting facility" threshold is 100,000 tpy. In both paragraphs (iv) and (v), the GHG major "modification" threshold is 75,000 tpy.

In *UARG,* the Supreme Court rejected EPA's "mistaken" interpretation of the CAA on which the Agency based the paragraph (iv) and (v) applicability provisions, *i.e.,* EPA's interpretation that "the Act compelled a greenhouse-gas-inclusive interpretation of the PSD and Title V triggers." 134 S. Ct. at 2442 (emphasis omitted); *see* Final Brief for Respondent EPA, No. 10-1073 and consolidated cases (Dec. 14, 2011) at 22 (Doc. No. 1347529) (arguing that "regulation of greenhouse gases … under Title II of the CAA … ma[de] the provisions of PSD and Title V automatically applicable to stationary sources of that pollutant" (emphasis omitted)). The Court also rejected "EPA's rewriting of the statutory thresholds" in paragraphs (iv) and (v) as "impermissible." *UARG*, 134 S. Ct. at 2445. Because paragraphs (iv) and (v) on their face "treat greenhouse gases as a pollutant for purposes of defining a

'major emitting facility' (or a 'modification' thereof) in the PSD context …, they are invalid." *Id.* at 2449.[4]

If one crossed out these provisions of EPA's rules that the Supreme Court invalidated, there would be nothing left for EPA to regulate in the absence of further rulemaking. With paragraphs (iv) and (v) invalidated, far from embodying an "automatic PSD trigger" for GHGs, EPA's PSD rules would simply read that GHGs "shall *not* be subject to regulation" for any purpose. 40 C.F.R. § 51.166(b)(48)(i) (emphasis added) (defining "subject to regulation"); *id.* § 52.21(b)(49)(i) (same); *id.* § 70.2 (same); *id.* § 71.2 (same).

In other words, with these provisions invalidated by *UARG*, there *are* no "regulations implementing [a 'BACT for anyway sources'] reading" of the statute. EPA Response to Petitions for Rehearing or Rehearing *en Banc*, Nos. 10-1425, 11-1037, and consolidated cases (D.C. Cir. Nov. 4, 2014) (Doc. No. 1520664). Nonetheless, EPA argues that section 165(a) of the CAA establishes, by operation of law, a *Chevron* Step One requirement that BACT for GHGs applies to anyway sources on the date that Title II motor vehicle GHG emission standards took effect (*i.e.*,

---

[4] For Title V, a "major source" is one that "emits[,] or has the potential to emit, 100 tpy or more of any air pollutant subject to regulation." 40 C.F.R. § 71.2 (definition of "major source"). In the Tailoring Rule, EPA provided that "[g]reenhouse gases … shall not be subject to regulation [under Title V] *unless*, as of July 1, 2011, the GHG emissions are at a stationary source emitting or having the potential to emit 100,000 tpy $CO_2$ equivalent emissions." *Id.* (emphasis added) (definition of "subject to regulation"). Because this rule "treat[ed] greenhouse gases as a pollutant for purposes of defining … a 'major source' in the Title V context," it is "invalid." *UARG*, 134 S. Ct. at 2449. EPA accepts this aspect of the *UARG* opinion. *See* EPA Motion at 7.

January 2, 2011).  This assertion is wrong; it ignores EPA's own rules (described above), the Supreme Court's decision, the statute, and fundamental principles of administrative law.

To begin, CAA section 165(a) and the Act's other PSD statutory provisions are not self-executing.  CAA section 161 calls for EPA rulemaking to define the specific PSD requirements that must be included in state implementation plans ("SIPs").  42 U.S.C. § 7471 ("[E]ach applicable implementation plan shall contain … measures as may be necessary, *as determined under regulations promulgated under this part*, to prevent significant deterioration of air quality." (emphasis added)).  Once general statutory language in CAA section 165 (and other PSD statutory provisions) have been given content by EPA through legislative rulemaking, the requirements established by that rulemaking govern the SIPs' PSD programs.  Once incorporated by states in their SIPs under CAA section 110, 42 U.S.C. § 7410, following legislative rulemaking, these regulatory requirements apply to individual sources.

EPA sees things differently.  According to EPA, the Supreme Court's decision in *UARG* "simply cannot be read as anything other than an affirmation of this Court's determinations that the BACT requirement applies to greenhouse gases automatically by operation of the Clean Air Act" and that "EPA regulations implementing that requirement should continue in effect as they apply to the BACT requirement for 'anyway' sources."  EPA Motion at 14.  Nothing could be further from the truth.

-8-

As the Supreme Court made clear, the issue before it was "whether EPA *permissibly determined* that a source already subject to the PSD program because of its emission of conventional pollutants (an 'anyway' source) *may be required* to limit its greenhouse-gas emissions by employing" BACT for GHGs.  *UARG*, 134 S. Ct. at 2438 (emphases added).  That is, the question the Supreme Court addressed was *not*— as EPA asserts—whether "the BACT requirement applies to greenhouse gases automatically by operation" of the Act, but whether it was "permissible" for EPA to interpret the Act as allowing the Agency to adopt a legislative rule that would establish a program requiring BACT for GHG emissions from anyway sources, *i.e.*, whether EPA "may require" such a program.  *Id.* at 2449; *see id.* at 2448 ("The question before us is whether *EPA's decision to require* BACT for greenhouse gases emitted by sources otherwise subject to PSD review is, as a general matter, a *permissible* interpretation of the statute under *Chevron*." (emphases added)).

In addressing that issue, the Supreme Court explained that it was deciding whether EPA had discretion, as a matter of Step Two of *Chevron*, to write a legislative rule that applies BACT to GHG emissions from anyway sources, *not* whether the CAA itself *compels* that result as a matter of *Chevron* Step One.  *Id.* at 2448-49.  In passages entirely ignored by EPA, the Court made clear that "[o]ur narrow holding is that nothing in the statute categorically prohibits EPA from interpreting the BACT provision to apply to greenhouse gases emitted by 'anyway' sources," *id.* at 2449, and that "EPA *may* require an 'anyway' source to comply with greenhouse-gas BACT *only*

*if* the source emits more than a *de minimis* amount"—a requirement that "EPA must justify … on proper grounds," *id.* (emphases added); *see id.* ("the Tailoring Rule applies BACT only if a source emits greenhouse gases in excess of 75,000 tons per year $CO_2e$, but *the Rule makes clear that EPA did not arrive at that number by identifying the* de minimis *level*" (emphasis added)); *see also id.* at 2435 n.1, 2437 n.3.

It was in this context that the Supreme Court concluded that EPA "may … continue to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of requiring BACT for 'anyway' sources." *Id.* The use of the permissive "may" means that it cannot be the case that, as EPA argues, the rules—in the wake of the Supreme Court's decision—*prescribe* a GHG BACT program for anyway sources, else their "continue[d]" application would not be permissive.

In support of its position, EPA in its motion focuses almost exclusively on a single word in the Supreme Court's *UARG* opinion—"continue"—which it repeats as if it were a mantra. *See* EPA Motion at 3-4, 8, 10, 15, 17. That word, however, appears only once in the opinion, in a sentence in the concluding paragraph stating that "EPA may … continue to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of requiring BACT for 'anyway' sources." *UARG*, 134 S. Ct. at 2449. EPA would have this Court translate this statement into an affirmative holding of the Supreme Court that "EPA may … 'continue' to apply its existing regulations implementing the PSD permit BACT requirement to … ["anyway"] sources' greenhouse gas emissions." EPA Motion at 3-4; *see also id.* at 8; *id.*

-10-

at 10 (similar); *id.* at 15 (similar); *id.* at 17 (similar).  The rest of the Court's opinion, however, refutes the notion that GHG BACT may simply be "continued" as is.

As the Supreme Court emphasized in response to the concerns of Justice Alito (joined by Justice Thomas) over EPA's current GHG BACT program, *see id.* at 2455-58 (Alito, J., concurring in part), "we cannot say that it is *impossible* for EPA and state permitting authorities *to devise* rational ways" of implementing a BACT program for greenhouse gases, *id.* at 2449 n.9 (emphases added), and "nothing in the statute *categorically* prohibits EPA from interpreting the BACT provision to apply to greenhouse gases emitted by 'anyway' sources," *id.* at 2449 (emphasis added).  The Court also made clear that "EPA may require an 'anyway' source to comply with greenhouse-gas BACT *only if* the source emits more than a *de minimis* amount" of GHGs and that "EPA *must* justify its selection [of "a true *de minimis* level"] on proper grounds."  *Id.* (emphases added).  The Court summarized its "narrow holding" thus: "[T]he record before us does not establish that the BACT provision as written is *incapable* of being sensibly applied to greenhouse gases."  *Id.* (emphasis added).

EPA's out-of-context invocation of the word "continue" cannot transform "invalid" applicability rules into the "anyway-source-only" GHG BACT regulatory program that EPA rejected in promulgating the Tailoring Rule.  The meaning of the Supreme Court's decision, when understood in context, is clear:  That "EPA may … continue to treat greenhouse gases as a 'pollutant subject to regulation under this chapter' for purposes of requiring BACT for 'anyway' sources," *id.*, means only that

-11-

EPA is *not precluded* from attempting to "devise" a GHG BACT program that

complies with the statute, *provided that* the Agency can successfully navigate the

obstacles to such regulation identified in the Court's opinion.  *Id.* at 2448-49 & n.9; *see*

State/Industry Motion at 10-11; EIM Motion at 7-17.  What the Supreme Court

emphatically did *not* contemplate is what EPA's motion seeks:  a ruling that "all

aspects of EPA's current approach" to regulating GHG emissions from anyway

sources may "continue" to be applied.  *UARG*, 134 S. Ct. at 2449.

In sum, although EPA "may … continue" to adhere to its "permissible"

interpretation of the CAA, under which the Act allows—but does not compel—EPA

to adopt rules under which BACT will apply to anyway sources' GHG emissions, *id.*

at 2449, 2448, the Court in *UARG* in no way affirmed a set of GHG BACT

regulations; it rejected GHG applicability rules requiring BACT and other permitting

elements.  Although EPA may undertake rulemaking in order to "continue to treat"

GHGs as a pollutant for purposes of requiring BACT for anyway sources, *id.* at 2449,

it is not authorized to "'continue' to require [GHG] PSD permits for 'anyway'

sources," EPA Motion at 8, under rules that the Supreme Court invalidated, and EPA

may require those sources to comply with BACT "*only if*" the Agency adopts, through

new rulemaking, a regulatory program that conforms to the Supreme Court's decision,

including by establishing a *de minimis* threshold that EPA has "justif[ied] … on proper

grounds."  *UARG*, 134 S. Ct. at 2449 (emphasis added).

## II.    Failure To Give Effect to the Supreme Court's Mandate Would Cause Confusion and Uncertainty for No Demonstrable Benefit.

In an attempt to support its argument that this Court nonetheless should allow EPA to "continue" to require PSD permits and BACT review for anyway sources' GHG emissions based on an "automatic trigger" interpretation of the Act, EPA argues that failure to do so would "create unwarranted uncertainty" as to PSD permitting requirements for GHGs.  EPA Motion at 15.  To the contrary, it is EPA's approach that would create unwarranted uncertainty.

The Supreme Court's mandate is clear:  EPA's rules are invalid to the extent they treat GHGs "as a pollutant for purposes of defining a 'major emitting facility[,]' … a 'modification[,]' … [and] a 'major source'" for PSD and Title V purposes. *UARG*, 134 S. Ct. at 2449.  Upon *UARG*'s invalidation of the PSD provisions defining 'major emitting facility' and 'modification' (*i.e.,* paragraphs (iv) and (v)) and the corresponding language of the Title V rule provisions, EPA's rules provide simply and clearly that GHGs "*shall not be subject to regulation*" under either PSD or Title V.  40 C.F.R. §§ 52.21(b)(49)(i), 71.2 (emphasis added).  No result could be clearer or less likely to create uncertainty.

Moreover, contrary to EPA's hyperbole, the invalidation of paragraphs (iv) and (v) of the Tailoring Rule cannot possibly mean, as EPA speculates, that "sources emitting [GHGs in] any amount … must be subject to the BACT requirement unless and until EPA completes a *de minimis* rulemaking."  EPA Motion at 18.  Not only was

there no "PSD trigger" for GHGs once the Supreme Court invalidated paragraphs

(iv) and (v), but paragraph (iii) provides that section (b)(23)(ii) of EPA's existing

regulations—the "any-increase" provision that EPA cites as creating confusion on

this point, *id.* at n.9—does *not* apply to GHGs.  According to paragraph (iii) of the

Tailoring Rule, "instead of applying the value in (b)(23)(ii)," a value of "75,000 tpy

$CO_2e$" applies for GHG emissions. 40 C.F.R. § 52.21(b)(49)(iii).  EPA's argument for

an automatic PSD trigger at any amount above a "zero" emission level is thus

contrary both to the statutory directive that PSD be implemented through rulemaking,

42 U.S.C. § 7471, and to the text of EPA's own rules.

EPA's request that the paragraph (iv) GHG-based definitions of "major

emitting facility" and "modification" be allowed to continue in effect therefore would

create both confusion and uncertainty.  Because both paragraph (iv) and paragraph (v)

defined what constituted a "major emitting facility" and a "modification" for GHGs,

leaving paragraph (iv) in place would trigger all the elements of PSD permitting—not

only BACT review—based on a source's GHG emissions.  *See* 134 S. Ct. at 2443

("[T]he PSD program … imposes numerous and costly requirements on those

sources that are required to apply for permits.").  By contrast, enforcing the Supreme

Court's mandate would provide clarity as to the reach of the current PSD rules.  Of

course, because EPA "may … continue" to adhere to its "permissible" interpretation

of the Act, *id.* at 2449, 2448, EPA is free, if it chooses, to propose and promulgate

regulations designed to establish the elements of a BACT program for GHG

-14-

emissions from anyway sources.  In any rulemaking giving regulatory content to its "permissible" interpretation, EPA would need to address issues that would directly affect an anyway-source program's scope and coverage.  *See* State/Industry Motion at 10-12; EIM Motion at 7-20.

EPA also argues that it need not conduct rulemaking to define a *de minimis* level for GHGs for BACT review, EPA Motion at 16, but that argument is both irrelevant and wrong.  Once the Supreme Court invalidated the PSD and Title V applicability triggers, these programs, by their own terms, could not apply to GHGs even if EPA had previously adopted a *de minimis* threshold for GHGs (which it has not).  Although EPA "'may' (but need not) elect to conduct a *de minimis* rulemaking in the future," *id.*, EPA must conduct such a rulemaking *if* it wants to establish a BACT program for GHG emissions from anyway sources.  As the Supreme Court put it, "EPA may require an 'anyway' source to comply with greenhouse-gas BACT *only if* the source emits more than a *de minimis* amount" of GHGs, and EPA "must justify its selection [of a *de minimis* level] on proper grounds."  *UARG*, 134 S. Ct. at 2449 (emphasis added).

In the absence of rulemaking establishing an anyway-source BACT program, permitting authorities and regulated parties would have to guess at the scope and application of a PSD program for GHGs, and any decisions they made based on their guesses would be subject to judicial challenge, enforcement risk, and potential reversal by EPA under future, revised PSD rules.  That is the confusing, uncertain, and

potentially chaotic prospect that EPA's motion offers—a prospect only worsened by

EPA's effort to give content to an anyway-source BACT program by means of a

memorandum not subjected to public comment. *See* State/Industry Motion at 17-19.[5]

Finally, any GHG BACT requirement for anyway sources can await rulemaking

without posing any identifiable risk. As EPA has found, GHGs such as $CO_2$ have no

local or regional impact: according to EPA, "[t]he global nature and effect of GHG

emissions raise questions regarding the suitability of CAA provisions [like the PSD

provisions] that are designed to protect local and regional air quality" to addressing

GHG emissions. 73 Fed. Reg. 44,354, 44,408 (July 30, 2008). Indeed, EPA did not

design a PSD program for GHG emissions based on those emissions' effects on air

---

[5] Although GHG BACT for anyway sources is not a Title V issue (because BACT is a PSD provision), EPA's proposal for addressing Title V on remand also creates confusion and uncertainty. EPA concedes that a facility's GHG emissions cannot trigger PSD permitting, EPA Motion at 10, but proposes that the Court vacate the Tailoring Rule Title V regulations only "*to the extent* they require a stationary source to obtain a title V permit solely because the source emits or has the potential to emit greenhouse gases above the applicable major source thresholds," *id.* at 19-20 (emphasis added). EPA states at another point that, for Title V, "[w]ith regard to the requirements to obtain permits based solely on the amount of greenhouse gas emissions, EPA specifically expects to effectuate the vacatur through … *narrowing revisions to certain provisions* such as certain definitions in 40 C.F.R. §§ 70.2 and 71.2." *Id.* at 11 n.4 (emphasis added). The Title V provisions of the Tailoring Rule, however, serve no purpose except to define the level of the specific GHG emissions that trigger permitting. *See* 75 Fed. Reg. at 31,607-08 (June 3, 2010) (revising Part 70 and Part 71 provisions). Thus, no part of the Tailoring Rule Title V provisions survives the Supreme Court's decision; that Court invalidated those provisions in their entirety. Failing to recognize that fact—based on the vague representation that EPA will "narrow[]" rule language in some unspecified way at an undefined time in the future—subjects Title V sources to potentially disruptive consequences. *See* State/Industry Motion at 18-19.

quality, but because it believed—incorrectly—that the statute compelled that program. In any event, the magnitude of the GHG emissions at issue here (*i.e.,* the increment between the amount of GHG emissions from new and modified anyway sources that would result with, and the amount that would result without, application of BACT at those sources) could have no discernible impact on the global pool of GHGs. In fact, EPA failed to identify any emission reductions that would be attributable to BACT reviews for GHG emissions. *See* 75 Fed. Reg. at 31,601.

## CONCLUSION

For the foregoing reasons, and reasons presented in the State/Industry Motion and the EIM Motion and Response, this Court should enter an order granting State and Industry Parties' petitions for review and declaring that the Tailoring Rule, and other challenged rulemakings to the extent EPA relied on them to support regulation of GHG emissions under the PSD and Title V programs, have been vacated.[6]

---

[6] EPA concedes that the challenged rules must be vacated to the extent they purport to apply PSD or Title V permitting provisions to stationary sources based solely on GHG emissions. EPA Motion at 19-20. For the reasons discussed above and in State/Industry Parties' Motion, those rules are invalid to the extent they purport to apply *any* PSD or Title V requirements to *any* sources with respect to GHG emissions. However, if this Court were to order, as EPA has requested, that the Agency on remand "consider … further revisions to its regulations … in light of [*UARG*]," *id.* at 20, this Court should explicitly recognize (1) that paragraph (iii) of the Tailoring Rule (a provision that the Supreme Court did *not* invalidate and that no party asks be vacated, and which defines the GHG "significance" threshold as 75,000 tpy) remains in place pending initiation and completion of any future rulemaking, and (2) that any future rules EPA may promulgate in response to *UARG* (including any rule establishing a *de minimis* level more stringent than the 75,000-tpy significance level in 40 C.F.R. §§ 51.166(b)(48)(iii) and 52.21(b)(49)(iii)) can have only prospective effect

Dated:  November 21, 2014                    Respectfully submitted,


/s/ Mark Walters                             /s/ Norman W. Fichthorn
Priscilla M. Hubenak                         F. William Brownell
Jon Niermann                                 Norman W. Fichthorn
Mark Walters                                 Henry V. Nickel
Assistant Attorney Generals                  Allison D. Wood
Texas Attorney General's Office              Hunton & Williams LLP
Environmental Protection Division            2200 Pennsylvania Avenue, NW
P.O. Box 12548                               Washington, DC  20037
Austin, TX  78711-2548                       (202) 955-1500
(512) 463-2012                               nfichthorn@hunton.com
*Counsel for State of Texas; Rick Perry,*    *Counsel for Utility Air Regulatory Group*
*Governor of Texas; Greg Abbott, Attorney*
*General of Texas; Texas Commission on*
*Environmental Quality; Texas Department of*
*Agriculture; Texas Railroad Commission;*
*Texas General Land Office; Barry Smitherman,*
*Texas Public Utility Commissioner; Donna*
*Nelson, Texas Public Utility Commissioner;*
*Kenneth Anderson, Texas Public Utility*
*Commissioner*

---

(*i.e.*, that any such rules would not cover permits that are issued or applied for prior to the new rules' effective date).  *Cf.* 45 Fed. Reg. 52,676, 52,686-87 (Aug. 7, 1980) (confirming that "a state with its own PSD program, in adopting new, more stringent requirements for BACT … in accordance with the new [40 C.F.R.] Part 51 regulations, may … apply the new requirements prospectively").

/s/ Luther Strange
Luther Strange
Attorney General
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7445
*Counsel for State of Alabama*

/s/ Jonathan A. Glogau
Pamela Jo Bondi
Attorney General of Florida
Jonathan A. Glogau
Special Counsel
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL  32399-1050
(850) 414-3681
*Counsel for State of Florida*

/s/ John E. Hennelly
Samuel S. Olens
Attorney General
Nels Peterson
Solicitor General
Isaac Byrd
Deputy Attorney General
John E. Hennelly
Senior Assistant Attorney General
40 Capitol Square, SW
Atlanta, GA  30334
(404) 656-7540
*Counsel for State of Georgia*

/s/ Roger R. Martella, Jr.
Roger R. Martella, Jr.
Peter D. Keisler
Timothy K. Webster
Quin M. Sorenson
Sidley Austin LLP
1501 K Street, NW
Washington, DC  20005
(202) 736-8000
*Counsel for American Chemistry Council;
American Frozen Food Institute; American
Fuel & Petrochemical Manufacturers; American
Iron and Steel Institute; American Petroleum
Institute; Brick Industry Association; Clean Air
Implementation Project; Corn Refiners
Association; Glass Association of North
America; Independent Petroleum Association of
America; Indiana Cast Metals Association;
Michigan Manufacturers Association;
Mississippi Manufacturers Association;
National Association of Home Builders; The
National Association of Manufacturers;
National Federation of Independent Business;
National Oilseed Processors Association; North
American Die Casting Association; Portland
Cement Association; Specialty Steel Industry of
North America; Tennessee Chamber of
Commerce and Industry; Western States
Petroleum Association; West Virginia
Manufacturers Association; and Wisconsin
Manufacturers and Commerce*

/s/ Donald Trahan
Herman Robinson
Executive Counsel
Donald Trahan
Jackie M. Marve
Kathy M. Wright
Louisiana Department of
Environmental Quality
Legal Division
P.O. Box 4302
Baton Rouge, LA  70821-4302
(225) 219-3985
*Counsel for Louisiana Department of
Environmental Quality*

/s/ Eric Groten
Eric Groten
Vinson & Elkins LLP
2801 Via Fortuna, Suite 100
Austin, TX  78746
(512) 524-8709
*Counsel for*
*Coalition for Responsible Regulation, Inc.*

/s/ Neil D. Gordon
Bill Schuette
Michigan Attorney General
Neil D. Gordon
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI  48909
*Counsel for State of Michigan*

/s/ Peter Glaser
Peter Glaser
Troutman Sanders LLP
401 Ninth Street, NW, Suite 1000
Washington, DC  20004
(202) 274-2998
*Counsel for National Mining Association*

/s/ Katherine J. Spohn
Jon Bruning
Attorney General of Nebraska
Katherine J. Spohn
Special Counsel to Attorney General
2115 State Capitol Building
P.O. Box 98920
Lincoln, NE  68509-8920
(402) 471-2682
*Counsel for State of Nebraska*

/s/ Leslie Sue Ritts
Leslie Sue Ritts
The Ritts Law Group, PLLC
620 Fort Williams Parkway
Alexandria, VA  22304
(703) 823-2292
*Counsel for National Environmental*
*Development Association's Clean Air Project*

-20-

/s/ Margaret Olson
Wayne Stenehjem
Attorney General
State of North Dakota
Margaret Olson
Assistant Attorney General
Office of Attorney General
500 North Ninth Street
Bismarck, ND  58501-4509
(701) 328-3640
*Counsel for State of North Dakota*

/s/ Steven P. Lehotsky
Steven P. Lehotsky
Sheldon Gilbert
U.S. Chamber Litigation Center, Inc.
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
*Counsel for the Chamber of Commerce of the*
*United States of America*

Jeffrey A. Rosen, P.C.
Robert R. Gasaway
William H. Burgess
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
*Counsel for the Chamber of Commerce of the*
*United States of America*

/s/ P. Clayton Eubanks
E. Scott Pruitt
Oklahoma Attorney General
P. Clayton Eubanks
Deputy Solicitor General
Office of the
Attorney General of Oklahoma
313 NE 21st Street
Oklahoma City, OK  73105
(405) 522-8992
*Counsel for State of Oklahoma*

/s/ Timothy J. Junk
Gregory F. Zoeller
Attorney General of Indiana
Timothy J. Junk
Deputy Attorney General
Office of the Attorney General
Indiana Government Center South
Fifth Floor
302 West Washington Street
Indianapolis, IN 46204
(317) 232-6247
*Counsel for State of Indiana*

/s/ J. Emory Smith, Jr.
Alan Wilson
Attorney General
J. Emory Smith, Jr.
Deputy Solicitor General
State of South Carolina
P.O. Box 11549
Columbia, SC  29211
(803) 734-3680
*Counsel for State of South Carolina*

/s/ Marty J. Jackley
Marty J. Jackley
Attorney General
State of South Dakota
1302 E. Highway 14, Suite 1
Pierre, SD  57501
(605) 773-3215
*Counsel for State of South Dakota*

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Circuit

Rule 25(c), I hereby certify that, on this 21st day of November, 2014, I caused the

foregoing document to be electronically filed with the Clerk of the Court by using the

Court's CM/ECF system.  All registered CM/ECF users will be served by the Court's

CM/ECF system.


/s/ Norman W. Fichthorn
Norman W. Fichthorn